[No. 56929–1. En Banc. October 25, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. WILLIAM J. PAWLYK, *Petitioner.*

458

*Miriam Schwartz* and *Michael Filipovic* of *Seattle–King County Public Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney, Lee Yates, Senior Deputy,* and *John Bell, Deputy,* for respondent.

*James E. Lobsenz* on behalf of Washington Association of Criminal Defense Lawyers and *Robert H. Whaley* and

*Bryan P. Harnetiaux* on behalf of Washington State Trial Lawyers Association, amici curiae.

BRACHTENBACH, J.—This case involves discovery of the findings and conclusions of a defense–retained psychiatrist who examined the defendant, where the defendant asserts an insanity defense but does not intend to call that psychiatrist as a witness. The trial court ordered disclosure. We affirm the trial court's discovery order, with one modification.

We are asked to reconsider our holdings in *State v. Bonds,* 98 Wn.2d 1, 653 P.2d 1024 (1982), *cert. denied,* 464 U.S. 831 (1983), that, when the issue of insanity is raised by the defense, the attorney–client privilege does not extend to the testimony of a psychiatrist, and the defendant waives his Fifth Amendment right against self–incrimination. We adhere to those holdings. In addition, we conclude that, regardless of whether the defense intends to call a defense–retained psychiatrist as an expert witness, neither this state's criminal discovery rules nor the work product doctrine preclude the State's discovery of that psychiatrist's written reports, or his testimony relating thereto, which are based on the psychiatrist's examination of a defendant who intends to rely upon an insanity defense. We further hold that the State may call that psychiatrist as a witness. We reject defendant's right to counsel and due process claims.[1]

On July 31, 1989, Larry Sturholm and Debra Sweiger were stabbed to death. The King County prosecutor charged William J. Pawlyk with two counts of aggravated first degree murder, but did not file notice of intent to seek the death penalty. At defense counsel's request, defendant was interviewed by psychiatrists Dr. G. Christian Harris and Dr. Emanuel Tanay. Pursuant to RCW 10.77.030 and CrR 4.2(c), the defense gave notice that defendant would

---

[1]We note that although defendant relies upon relevant provisions of the Washington State Constitution, he does not argue that any different analysis applies as to any issue than applies under the federal constitution.

rely on an insanity defense, and indicated that Dr. Tanay would be called to testify in support of that defense. The defense states that it will not call Dr. Harris.

When the State was informed of the insanity defense, it contacted Dr. Harris as a prospective witness and learned that he had interviewed defendant. The State moved to discover Dr. Harris' written reports of his interview of defendant and to interview Dr. Harris concerning his findings and the basis for his conclusions. The State also moved to discover the results of "any and all psychological testing that may have been performed on the defendant by anyone" and for copies of all court orders appointing experts to examine defendant at public expense. Clerk's Papers, at 4. Further, the State moved for copies of reports by any other psychiatrist, psychologist, or expert in the field of forensic medicine who examined defendant either before or after Dr. Tanay examined him. The State served Dr. Harris with a subpoena to testify and a subpoena duces tecum for his reports. The State maintained that it wants Dr. Harris as its expert witness, perhaps its only expert witness. The defense moved to quash the subpoenas.

On January 24, 1990, the trial court granted the discovery requests set out above, but did not allow discovery as to "any written letters between defense counsel and Dr. Harris, and Dr. Harris shall not be interviewed concerning any communications between Dr. Harris and defense counsel." Clerk's Papers, at 66. The order directs that the "State shall have access to the discovery materials . . . [Dr. Harris] used in order to form the basis for his opinion." Clerk's Papers, at 66. The trial court ordered that "all information provided to the State pursuant to this order be utilized at trial only in the event that expert testimony of a psychiatrist is admitted before the jury in support of the insanity defense at trial." Clerk's Papers, at 66. The court denied the defense motion to quash the subpoenas of Dr. Harris.

The State's request for discovery as to Dr. Tanay's examination of defendant was granted and is not at issue.

Defendant's motion for interlocutory discretionary review of the discovery order was granted by the Court of Appeals, and the matter was transferred here by this court. Proceedings at the trial court are stayed pending this decision.

Defendant raises a number of issues concerning the trial court's order, involving the attorney–client privilege, the privilege against self–incrimination, the right to counsel, the criminal court discovery rules and RCW 10.77, the work product doctrine, and due process. Each is addressed below.

## ATTORNEY–CLIENT PRIVILEGE

Defendant argues that the trial court's order violates the attorney–client privilege both as to the ordered disclosures, and as to the State's use of Dr. Harris as a witness. Defendant maintains that language to the contrary in *State v. Bonds,* 98 Wn.2d 1, 653 P.2d 1024 (1982), *cert. denied,* 464 U.S. 831 (1983), is dicta. The State contends that *Bonds* controls.

In *Bonds,* a psychiatrist was appointed to assist the defendant in a juvenile decline hearing and was called by the defense to testify at the decline hearing. The juvenile court declined jurisdiction. Defendant pleaded not guilty and not guilty by reason of insanity. Defendant moved in limine that the State not be allowed to use the psychiatrist as a rebuttal witness at trial. His motion was denied, and the doctor was called to testify for the State. On appeal, defendant claimed that the psychiatrist's testimony was protected under the attorney–client privilege, since the doctor had been part of the defense team at the juvenile proceedings. This court rejected this contention on the basis that the public interest in full disclosure outweighs the privilege. A majority of this court found persuasive the reasoning in Saltzburg, *Privileges and Professionals: Lawyers and Psychiatrists,* 66 Va. L. Rev. 597, 635–42 (1980), where the author

argues that the defense psychiatrist's examination of defendant is likely to be more accurate on the issue of insanity than that of the prosecution's. The defense psychiatrist will generally

> examine defendant earlier than the prosecution. The examination will thus be closer to the time of the offense, when defendant's recollections are clearer and there is less likelihood that defendant's mental condition has changed. Moreover, a defendant might benefit by undergoing several psychiatric examinations, examining reports of psychiatrists unfavorable to his insanity defense, and tailoring his responses in subsequent examinations more favorably to his defense. Defendant is also likely to be more cooperative with his own psychiatrist and give a more accurate impression of his mental condition. Saltzburg argues, and we agree, that for these reasons all available evidence of defendant's mental condition should be put before the jury.

*Bonds,* at 21. This argument is consistent with previous decisions founded on the principle that when a defendant pleads mental irresponsibility, every act of his life is admissible. *Bonds,* at 22; *State v. Music,* 79 Wn.2d 699, 711–12, 489 P.2d 159 (1971), *vacated on other grounds,* 408 U.S. 940 (1972); *State v. Huson,* 73 Wn.2d 660, 666–67, 440 P.2d 192 (1968), *cert. denied,* 393 U.S. 1096 (1969). The court held that "the attorney–client privilege should not extend to the testimony of a psychiatrist when the issue of insanity is raised by the defense." *Bonds,* at 22.

Defendant argues that our conclusion in *Bonds* is dicta, and that the attorney–client privilege set out in RCW 5.60-.060(2) should extend to communications between a defendant and a psychiatric expert retained by defense counsel for the purpose of assisting counsel in preparing for trial. He reasons that unlike a treating psychiatrist, a psychiatrist retained by counsel to assist in the preparation of the defense is an agent of counsel for purposes of the attorney–client privilege. Defendant contends that he has not waived the privilege by offering testimony which opens the door or by using otherwise privileged information as the basis of opinion testimony.

Defendant mistakenly characterizes our holding in *Bonds* as dicta. He reasons that the holding is limited to cases where defense waives the attorney–client privilege by presenting testimony of the psychiatrist because in *Bonds* the defense presented the psychiatrist's testimony at the

decline hearing. Defendant fails to recognize that a majority of the court refused to limit its holding in that fashion, as demonstrated by the fact that a dissent in *Bonds* expressly argued for such a limited holding. *See Bonds,* at 29 (Utter, J., dissenting). Instead, the majority's reasoning and its holding demonstrate that the attorney–client privilege does not extend to the testimony of the psychiatrist regardless of whether the defendant first calls the psychiatrist to the stand or otherwise uses the psychiatrist's written reports or the findings and conclusions resulting from the psychiatrist's examination of defendant as to the insanity question.

We are aware that other courts have split on this question. Some courts hold that when a defendant asserts an insanity defense, the attorney–client privilege is waived or otherwise does not apply as to a nontestifying defense–retained examining psychiatrist. *E.g., Haynes v. State,* 103 Nev. 309, 739 P.2d 497 (1987); *State v. Craney,* 347 N.W.2d 668 (Iowa), *cert. denied,* 469 U.S. 884 (1984); *People v. Edney,* 39 N.Y.2d 620, 350 N.E.2d 400, 385 N.Y.S.2d 23 (1976);[2] *State v. Carter,* 641 S.W.2d 54 (Mo. 1982), *cert. denied,* 461 U.S. 932 (1983). Others hold that the attorney–client privilege applies. *E.g., United States v. Alvarez,* 519 F.2d 1036 (3d Cir. 1975); *Houston v. State,* 602 P.2d 784 (Alaska 1979); *People v. Lines,* 13 Cal. 3d 500, 531 P.2d 793, 119 Cal. Rptr. 225 (1975); *Miller v. District Court,* 737 P.2d 834 (Colo. 1987); *State v. Pratt,* 284 Md. 516, 398 A.2d 421 (1979).

---

[2]On defendant's petition for a writ of habeas corpus in *Edney,* the United States District Court for the Eastern District of New York addressed his argument that the State should not be able to call a defense–retained psychiatrist who examined defendant on the issue of a mental status defense. The court commented that

> defendant suggests that he be permitted to suppress any unfavorable psychiatric witness whom he had retained in the first instance, under the guise of attorney–client privilege, while he endeavors to shop around for a "friendly" expert, and take unfriendly experts off the market.

*United States ex rel. Edney v. Smith,* 425 F. Supp. 1038, 1052 (E.D.N.Y. 1976), *aff'd,* 556 F.2d 556 (2d Cir.), *cert. denied,* 431 U.S. 958 (1977).

We considered the question carefully in *Bonds,* and we decline to overrule our holding there. We adhere to our holding that the attorney–client privilege does not extend to the testimony of a psychiatrist when a defendant raises insanity as a defense. *Bonds,* at 22; *State v. Jones,* 99 Wn.2d 735, 750, 664 P.2d 1216 (1983); *State v. Hutchinson,* 111 Wn.2d 872, 882, 766 P.2d 447 (1989); *accord, State v. Brewton,* 49 Wn. App. 589, 591, 744 P.2d 646 (1987).

## SELF–INCRIMINATION

Defendant contends that the ordered disclosure and use by the State of Dr. Harris as an expert witness violates his right against self–incrimination.

In *Bonds,* at 20, we held that statements uttered in the context of a psychiatric examination are removed from the reach of the Fifth Amendment when the defendant raises an insanity defense. *Accord, State v. Jones,* 111 Wn.2d 239, 246, 759 P.2d 1183 (1988); *State v. Jones,* 99 Wn.2d 735, 749, 664 P.2d 1216 (1983). We derived this conclusion from language in *Estelle v. Smith,* 451 U.S. 454, 465, 68 L. Ed. 2d 359, 101 S. Ct. 1866 (1981). In *Smith,* a capital murder case, the Court held that defendant's Fifth Amendment right against self–incrimination was violated by the State's presentation, during the penalty phase of the trial, of testimony by a psychiatrist on the issue of future dangerousness. The psychiatrist was appointed by the trial court, on the court's own motion, to examine defendant on the question of his competency. Defendant neither asserted an insanity defense nor offered psychiatric testimony at trial. Defendant was not given *Miranda* warnings nor was counsel informed of the possible use of the examination on the issue of future dangerousness (and may not even have been informed about the psychiatric examination).

The Court emphasized the "distinct circumstances" of the case, *Smith,* at 466, and recognized that in other circumstances the State might have an interest in introducing psychiatric testimony to rebut an insanity defense:

When a defendant asserts the insanity defense and introduces supporting psychiatric testimony, his silence may deprive the State of the only effective means it has of controverting his proof on an issue that he interjected into the case. Accordingly, several Courts of Appeals have held that, under such circumstances, a defendant can be required to submit to a sanity examination conducted by the prosecution's psychiatrist.

*Smith,* at 465. This was the language we relied upon in *State v. Bonds,* 98 Wn.2d 1, 653 P.2d 1024 (1982), *cert. denied,* 464 U.S. 831 (1983), when we held that the Fifth Amendment does not extend to a psychiatric examination of defendant upon assertion of an insanity defense.

Subsequent to our decision in *Bonds,* the United States Supreme Court expressly held that "if a defendant requests a psychiatric examination in order to prove a mental–status defense, he waives the right to raise a Fifth Amendment challenge to the prosecution's use of evidence obtained through that examination to rebut the defense." *Powell v. Texas,* ___ U.S. ___, 106 L. Ed. 2d 551, 556, 109 S. Ct. 3146 (1989); *Buchanan v. Kentucky,* 483 U.S. 402, 422–23, 97 L. Ed. 2d 336, 107 S. Ct. 2906, *reh'g denied,* 483 U.S. 1044, 97 L. Ed. 2d 807, 108 S. Ct. 19 (1987). *See Granviel v. Lynaugh,* 881 F.2d 185, 190 (5th Cir. 1989), *cert. denied,* 110 S. Ct. 2577 (1990).

Defendant's Fifth Amendment right against self–incrimination is not violated by the trial court's ordered disclosures or the State's use of Dr. Harris as an expert witness to rebut defendant's insanity defense.

Defendant also relies upon RCW 10.77.020(4) as affording protection against self–incrimination. RCW 10.77 governs procedures concerning the defense of insanity and the competence of the defendant to stand trial. CrR 4.2(c). RCW 10.77.020(4) provides that

[a]ny time the defendant is being examined by court appointed experts or professional persons pursuant to the provisions of this chapter . . . [he] may refuse to answer any question if he believes his answers may tend to incriminate him or form links leading to evidence of an incriminating nature.

By its terms, the statute does not apply to Dr. Harris' examination of defendant because Dr. Harris' examination

was not an examination pursuant to RCW 10.77 by a court appointed expert or professional person.

The trial court also ordered disclosure of copies of all court orders appointing experts to examine defendant at public expense, and the results of all psychiatric and psychological testing of defendant by anyone, and for any reports of any other psychiatrists or psychologists or other forensic experts examining defendant. The record before us contains no clue as to whether any further examinations of defendant have occurred (other than Dr. Tanay's), and, if so, by whom and under what circumstances they were conducted.

Thus, we do not know whether the trial court's order might encompass an examination conducted under RCW 10.77.060(1) (the examination referenced in RCW 10.77-.020(4)), and therefore make no comment as to the applicability of RCW 10.77.020(4) to possible additional examinations. Any further discussion would be purely speculative. We do note, however, that our recent reference to RCW 10.77.020(4) in *State v. Hutchinson*, 111 Wn.2d 872, 884, 766 P.2d 447 (1989) should not be read as implying that the statutory privilege against self–incrimination applies to any and all psychiatric evaluations of a defendant regardless of the circumstances; any such reading plainly would not comport with the express terms of RCW 10.77.

We note that defendant's argument set out in his brief is, in any event, concerned solely with the ordered disclosures relating to Dr. Harris' examination. The statutory privilege of RCW 10.77.020(4) does not apply to that examination.

RIGHT TO COUNSEL

Defendant maintains that ordering disclosure of statements he made to a defense–retained psychiatric expert and disclosure of that expert's opinion as to sanity, where the expert is not endorsed as a defense witness, violates his

right to counsel. Defendant reasons that counsel's paramount duty of loyalty to the client, including maintaining confidentiality, the effectiveness of counsel's assistance, and the government's obligation not to interfere with defendant's exercise of the right to counsel are all implicated by the ordered disclosures and the State's use as a witness of the defense–retained psychiatrist.

█ Initially we note that while defendant suggests that some courts hold that the right to counsel is not violated because it is waived by assertion of an insanity defense, most courts finding no violation do not do so on the basis of waiver. Further, the United States Supreme Court has indicated that a defendant does not automatically waive his right to counsel merely by asserting an insanity defense. *Powell v. Texas*, 106 L. Ed. 2d at 556–57; *accord, Granviel v. Lynaugh, supra.*

Quite aside from any waiver question, however, we conclude that defendant's right to counsel is not violated by the trial court's ordered disclosures. In *Buchanan v. Kentucky, supra,* the defense joined in a request for a psychiatric examination for purposes of enabling petitioner (defendant) to receive psychiatric treatment while awaiting trial, and petitioner asserted a mental status defense— extreme emotional disturbance. The prosecution used a report prepared as a result of the requested examination to rebut petitioner's mental status defense. The Court rejected petitioner's right to counsel claim, first distinguishing the case from *Estelle v. Smith, supra,* by noting that petitioner had the opportunity to discuss the examination and its scope with counsel, unlike the situation in *Smith.* The petitioner in *Buchanan* argued, however, that although he agreed to the examination, he had no idea, because counsel could not anticipate, that results of the examination he requested might be used to undermine his mental status defense. The Court responded to this argument:

> Petitioner, however, misconceives the nature of the Sixth Amendment right at issue here by focusing on the use of . . .

[the] report rather than on the proper concern of this Amendment, the consultation with counsel, which petitioner undoubtedly had. Such consultation, to be effective, must be based on counsel's being informed about the scope and nature of the proceeding. There is no question that petitioner's counsel had this information. To be sure, the effectiveness of the consultation also would depend on counsel's awareness of the possible uses to which petitioner's statements in the proceeding could be put. Given our decision in *Smith,* however, counsel was certainly on notice that if, as appears to be the case, he intended to put on a "mental status" defense for petitioner, he would have to anticipate the use of psychological evidence by the prosecution in rebuttal. In these circumstances, then, there was no Sixth Amendment violation.

(Footnote omitted.) *Buchanan,* at 424–25.

■ The Court's reasoning applies here. Counsel clearly knew about the nature and scope of the proceeding, and was on notice not only as a result of *Estelle v. Smith,* 451 U.S. 454, 68 L. Ed. 2d 359, 101 S. Ct. 1866 (1981), but also as a result of *Bonds,* of the possible use of the psychological evidence by the prosecution in rebuttal. Despite defendant's wish to have us rewrite *Bonds* we decline to do so, and, because we there held that neither the Fifth Amendment nor the attorney–client privilege offered protection from psychiatric testimony upon defendant's assertion of an insanity defense, defense counsel was on notice that evidence resulting from Dr. Harris' examination might be used by the prosecution to rebut defendant's insanity defense. Further, the examination here was clearly intended to concern a possible insanity defense and, needless to say, defense counsel was aware of this.

■ We are not persuaded by defendant's specific arguments relating to counsel's obligation to maintain confidentiality, counsel's effectiveness, and defendant's right to be free of improper governmental interference with his right to counsel. First, we perceive defendant's arguments in part as a recasting of defendant's attorney–client privilege claim as a constitutional right to counsel claim. We do not agree that the attorney–client privilege is of constitutional dimension. *See United States ex rel. Edney v. Smith,* 425 F. Supp. 1038, 1054 (E.D.N.Y. 1976) (court declined to

freeze attorney–client–psychiatrist privilege into constitutional form), *aff'd,* 556 F.2d 556 (2d Cir.), *cert. denied,* 431 U.S. 955 (1977).

Moreover, in addition to the reasoning of the United States Supreme Court in *Buchanan v. Kentucky,* 483 U.S. 402, 97 L. Ed. 2d 336, 107 S. Ct. 2906, *reh'g denied,* 483 U.S. 1044, 97 L. Ed. 2d 807, 108 S. Ct. 19 (1987), we are inclined to agree with the court in *State v. Craney,* 347 N.W.2d 668, 677 (Iowa), *cert. denied,* 469 U.S. 884 (1984), that defendant's asserted right to the effective assistance of counsel under the facts of this case reflects the "bygone philosophy that for an attorney's investigations to be effective they must be shrouded in secrecy." If defendant asserts an insanity defense, evidence pertaining to that defense must be available to both sides at trial. There is thus no need for the confidentiality defendant maintains is required.

We find no violation of defendant's right to counsel resulting from the trial court's ordered disclosures or the State's use of Dr. Harris as a witness. Other courts have reached the same conclusion under similar circumstances. *See, e.g., United States ex rel. Edney v. Smith,* 425 F. Supp. 1038, 1053–54 (E.D.N.Y. 1976), *aff'd,* 556 F.2d 556 (2d Cir.), *cert. denied,* 431 U.S. 958 (1977); *Lange v. Young,* 869 F.2d 1008 (7th Cir.), *cert. denied,* 490 U.S. 1094 (1989); *Noggle v. Marshall,* 706 F.2d 1408 (6th Cir.), *cert. denied,* 464 U.S. 1010 (1983); *State v. Craney,* 347 N.W.2d 668 (Iowa), *cert. denied,* 469 U.S. 884 (1984); *State v. Dodis,* 314 N.W.2d 233 (Minn. 1982).

## DISCOVERY RULES; RCW 10.77

Defendant argues that the trial court's authority to order discovery where the defendant intends to assert an insanity defense is governed exclusively by CrR 4.7 and RCW 10.77. Defendant contends that the discovery order here is not authorized under either the court rule or the statute.

■■ The scope of discovery is within the sound discretion of the trial court and its decisions will not be disturbed

absent manifest abuse of that discretion. *State v. Yates,* 111 Wn.2d 793, 797, 765 P.2d 291 (1988); *State v. Boehme,* 71 Wn.2d 621, 633, 430 P.2d 527 (1967), *cert. denied,* 390 U.S. 1013 (1968). CrR 4.7 governs criminal discovery. *State v. Hutchinson,* 111 Wn.2d 872, 876, 766 P.2d 447 (1989). The rule guides the trial court in the exercise of its discretion over criminal discovery. *Yates,* at 797. CrR 4.7 is a reciprocal discovery rule which contains the prosecutor's and defendant's obligations in engaging in discovery. *Yates,* at 797; *Hutchinson,* at 878–79. The rule also allows for additional and discretionary disclosures and delineates matters not subject to disclosure. *Yates,* at 797.

As this court has stated, and repeated, sound policy underscores the reciprocal nature of the discovery rules:

> [W]e . . . observe that the rules of discovery are designed to enhance the search for truth in both civil and criminal litigation. And, except where the exchange of information is not otherwise clearly impeded by constitutional limitations or statutory inhibitions, the route of discovery should ordinarily be considered somewhat in the nature of a 2–way street, with the trial court regulating traffic over the rough areas in a manner which will insure a fair trial to all concerned, neither according to one party an unfair advantage nor placing the other at a disadvantage.

*Boehme,* at 632–33; *Yates,* at 799.

This policy must be kept in mind when examining the scope of CrR 4.7, as well as the principle of liberalized discovery to serve the purposes underlying CrR 4.7 "to provide adequate information for informed pleas, expedite trials, minimize surprise, afford opportunity for effective cross-examination, and meet the requirements of due process" while keeping discovery "consistent with protections of persons, effective law enforcement, the adversary system, and national security." *Yates,* at 797 (quoting Criminal Rules Task Force, *Washington Proposed Rules of Criminal Procedure* 77 (West Pub'g Co. ed. 1971) (quoting *ABA Standards Relating to Discovery and Procedure Before Trial,* Std. 1.2, at 34 (Approved Draft, 1970))). CrR 1.2 directs that the Superior Court Criminal Rules are to be

"construed to secure simplicity in procedure, fairness in administration, effective justice, and the elimination of unjustifiable expense and delay."

We address, in turn, the possible application of CrR 4.7-(b)(1), (g), and (b)(2)(x).

CrR 4.7(b)(1) provides that a defendant is obliged to disclose "the names and addresses of persons whom the defendant intends to call as witnesses at the hearing or trial, together with any written or recorded statements and the substance of any oral statements of such witness." Because the defense does not intend to call Dr. Harris, we agree with defendant that this provision does not authorize discovery of Dr. Harris' records or observations.

CrR 4.7(g) states:

Subject to constitutional limitations, the court may require the defendant to disclose any reports or results, or testimony relative thereto, of physical or mental examinations or of scientific tests, experiments or comparisons, or any other reports or statements of experts which the defendant intends to use at a hearing or trial.

This provision applies to reports and results of mental examinations, and other reports and statements of experts, including medical and scientific reports and results. However, this provision provides for disclosure of those reports, results, or statements which will be used at trial. Defendant states that Dr. Harris will not testify at trial and that his evaluation and reports will not form the basis for other expert testimony at trial. Under these circumstances, CrR 4.7(g) does not authorize the disclosure ordered by the trial court.

CrR 4.7(b)(2)(x) authorizes the trial court to require the defendant to "allow inspection of physical or documentary evidence in defendant's possession." In *Yates,* this provision was held to give the trial court discretionary authority to order that recorded or written statements of potential prosecution witnesses which were taken by defense counsel or the defense investigator be provided to the State. Defendant argues that the holding in *Yates* is limited to statements of persons who will be testifying at trial, and

that *Yates* teaches that this discretionary portion of the discovery rule does not contemplate a defense obligation to disclose all documents in its files, because if that were the rule, this court in *Yates* would also have upheld ordered disclosure of defense interview notes.

Contrary to defendant's arguments, we did not restrict production of documentary evidence under CrR 4.7(b)(2)(x) to that pertaining to witnesses who will be called to testify at trial. Under the facts in *Yates,* the recorded statements were of witnesses who were to be called at trial, and we simply recounted this fact in the context of our holding. Moreover, we agree that not all defense documentary material is discoverable under this section. Such information may be protected under the work product doctrine, the attorney–client privilege, or defendant's right not to incriminate himself, for example. However, the fact that CrR 4.7(b)(2)(x) does not authorize discovery of all documents in defendant's file does not resolve the question whether a particular document may be discovered under the section.

■ We conclude that where the defendant asserts an insanity defense, CrR 4.7(b)(2)(x) authorizes the court, in its discretion, to order disclosure of written reports in the possession of the defendant or defense counsel which have been prepared by defense psychiatrists who examine defendant on the issue of sanity. Such reports are documentary evidence within the scope of CrR 4.7(b)(2)(x). As to testimony relating thereto, we perceive no bar in CrR 4.7 or RCW 10.77[3] to discovery from the psychiatrist of his findings and the basis for his conclusions.

In concluding that CrR 4.7(b)(2)(x) authorizes the ordered discovery, we are aware of defendant's various arguments relating to principles of statutory construction

---

[3]We note that RCW 10.77.100 provides:

"Subject to the rules of evidence, experts or professional persons who have reported pursuant to this chapter may be called as witnesses at any proceeding held pursuant to this chapter. Both the prosecution and the defendant may summon *any other qualified expert or professional persons to testify.*" (Italics ours.)

which we apply in construing court rules. *See State v. Hutchinson,* at 877 (citing *State v. Baxter,* 45 Wn. App. 533, 540, 726 P.2d 1247 (1986), *overruled on other grounds in State v. Hanson,* 52 Wn. App. 368, 760 P.2d 941, *review denied,* 111 Wn.2d 1030 (1988)). In key part, defendant argues that because CrR 4.7(g) specifically relates to scientific and medical evidence, it controls discovery of such material. Because CrR 4.7(g) grants discretionary authority to compel disclosure when the materials will be used by defendant at trial, defendant reasons, the ordered discovery is not authorized where defendant does not use the materials at trial.

We do not read CrR 4.7(b)(2)(x) and (g) so narrowly. If materials will be used at trial, CrR 4.7(g) grants the court discretionary authority to order disclosure. Documentary evidence in defendant's possession which defendant does not intend to use at trial is within the scope of CrR 4.7(b)(2)(x), and the trial court has authority to order disclosure in the exercise of its sound discretion. Discovery under both provisions is subject to constitutional limitations.

Moreover, if we accepted defendant's parsing of the rule we would have to place form over substance. The principles and policies of criminal discovery would be ill served by ignoring the compelling reasons for permitting discovery of a defense–retained psychiatrist's report on defendant's sanity, solely on the ground that under one possible construction of the criminal court discovery rule the rule does not expressly authorize discovery.

Our conclusion that the rule allows the ordered discovery is consistent with the general principles relating to criminal discovery which we have recounted above. More particularly, it would be manifestly unjust to permit defendant to assert an insanity defense, place his mental state directly in issue, and then allow him protection from discovery of what may be the best evidence, and perhaps the only truly accurate evidence, relating to his mental state. Also, as the court in *Lange v. Young,* 869 F.2d 1008, 1013 (7th Cir.), *cert.*

*denied,* 490 U.S. 1094 (1989) observed, unlike other issues in a criminal trial, the insanity defense is distinctive because the defendant is the sole source of evidence on his sanity and therefore has the opportunity to manipulate the information which the State receives. Allowing the State access to a defense–retained psychiatrist's reports, findings, and conclusions serves to equalize the relative positions of the parties on this issue, and avoids according the defendant an unfair advantage. Thus, discovery here serves the policy and purposes underscoring the criminal discovery rule.

Moreover, there is no question but that if a State selected psychiatrist examined defendant and found him insane, the defendant would be entitled to this information as a matter of due process. *See Brady v. Maryland,* 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963). Given the reciprocal nature of the criminal discovery process and the unique nature of the evidence at issue, the State should be entitled in the discretion of the trial court to discovery of a defense–retained psychiatrist's reports and the findings and the basis for his conclusions.

## WORK PRODUCT

Defendant claims that absent a showing of exceptional circumstances, the findings and conclusions of defense consulting experts are protected by the work product doctrine.

Our discussion of this issue which follows is limited to the context in which the issue arises in this case. Our analysis is to have no effect in civil cases, where different policies, interests and circumstances may dictate a different analysis or result.

The work product doctrine protects from discovery an attorney's work product, so that attorneys can "work with a certain degree of privacy and plan strategy without undue interference." *Coburn v. Seda,* 101 Wn.2d 270, 274, 677 P.2d 173 (1984) (citing *Hickman v. Taylor,* 329 U.S. 495, 510–11, 91 L. Ed. 2d 451, 67 S. Ct. 385 (1947)). The

immunity is not absolute; whether the work product doctrine will afford protection depends on both the type of material sought to be discovered and the adversary's need for it. E. Epstein & M. Martin, *The Attorney–Client Privilege and the Work–Product Doctrine* 99 (2d ed. 1989).

The work product doctrine is most often asserted in civil litigation, but the doctrine applies as well in criminal proceedings. *United States v. Nobles,* 422 U.S. 225, 238, 45 L. Ed. 2d 141, 95 S. Ct. 2160 (1975).

> At its core, the work–product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case. But the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.

(Footnote omitted.) *Nobles,* at 238–39. *See also Heidebrink v. Moriwaki,* 104 Wn.2d 392, 396, 706 P.2d 212 (1985).

Defendant argues that Dr. Harris is an agent of defense counsel whose work is therefore protected by the work product doctrine. Defendant then reasons that under CR 26(b)(4)(B) the State must demonstrate exceptional circumstances before disclosure of the psychiatrist's work product may be had. Amici on behalf of Washington Association of Criminal Defense Lawyers and Washington State Trial Lawyers Association also urge us to follow the rule in CR 26(b)(4)(B).

As we have previously said, "the civil rules by their very terms apply only to civil cases." *State v. Gonzalez,* 110 Wn.2d 738, 744, 757 P.2d 925 (1988) (citing CR 1; *State v. Christensen,* 40 Wn.2d 329, 242 P.2d 755 (1952) (CR 26 does not apply in criminal cases)). In *Gonzalez,* at 744, we reasoned that "CrR 4.7 sets out the exact obligations of the prosecutor and defendant in engaging in discovery, the detail of which suggests to us that no further supplementation should be sought from the civil rules."

We decline to apply CR 26 in this criminal case.[4] CrR 4.7 specifically addresses the work product doctrine.

Pursuant to CrR 4.7(f)(1):

> Disclosure shall not be required of legal research or of records, correspondence, reports or memoranda to the extent that they contain the opinions, theories or conclusions of investigating or prosecuting agencies except as to material discoverable under subsection (a)(1)(iv).

 This section is a codification of the attorney's work product privilege in the criminal context, and applies to both the prosecution and the defense. 12 R. Ferguson, Wash. Prac., *Criminal Practice and Procedure* § 1304, at 250 (1984). While the section specifically addresses the prosecution's work product and does not mention the word "defense" or "defendant," we conclude that the rule necessarily applies to defense work product as well as to prosecution work product. The language of the rule lends itself to this construction, as the reference to "investigating . . . agencies" is broad enough to include defense work product.

 The work product protection described in CrR 4.7(f)(1) does not extend to certain reports and testimony

---

[4] In relevant part, CR 26(b)(4)(B), which applies to facts and opinions acquired or developed in anticipation of litigation, provides that a party may obtain facts known or opinions held by an expert who is not expected to be called as a witness only "upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means."

Even if we agreed with defendant that this rule applies we would have no trouble upholding the trial court's ordered disclosures. While it is true that the State may have defendant examined by its own psychiatrist, RCW 10.77.060, such an examination cannot be deemed an adequate substitute for evidence of a defense examination. Defense examinations generally occur closer to the time of the alleged crime, and before the defendant's condition changes or he "tailors" responses, and the defendant is more likely to give an accurate impression of his mental condition to his own psychiatrist. *See State v. Bonds*, 98 Wn.2d 1, 21, 653 P.2d 1024 (1982) (citing Saltzburg, *Privileges and Professionals: Lawyers and Psychiatrists*, 66 Va. L. Rev. 597, 635–42 (1980)), *cert. denied*, 464 U.S. 831 (1983). Thus, even if CR 26(b)(4)(B) were applied, the State could readily meet its burden of establishing "exceptional circumstances"—it is not merely impracticable for the State to obtain the facts and opinions on defendant's sanity or insanity which the defense obtains through such an examination, it is virtually impossible.

of experts: The exception noted in the rule, CrR 4.7(a)(1)(iv), directs disclosure by the prosecution of "any reports or statements of experts made in connection with the particular case, including results of physical or mental examinations and scientific tests, experiments, or comparisons." CrR 4.7(g) similarly allows discovery of such information from the defense, although, as noted above, this section pertains to such materials to be relied upon by defendant at trial. The point to be made is, however, that CrR 4.7 plainly contemplates that such information is not protected by the work product doctrine. *Accord,* 12 R. Ferguson, Wash. Prac., *Criminal Practice and Procedure* § 1304, at 250 (1984).

The reason CrR 4.7 does not provide protection for such information which the defense obtains is that "[d]isclosure by the accused is required in an area where the prosecution has a particular need to have time for extensive preparation, and where the defense material is least likely to present conflicts with privileges accorded to the accused." Criminal Rules Task Force, *Washington Proposed Rules of Criminal Procedure* 83 (West Pub'g Co. ed. 1971). This same reasoning applies whether the defense intends to call its examining psychiatrist or not. Once the defendant puts the question of insanity at issue, the State has exceptional need for evidence to rebut the insanity defense. As explained in this opinion, none of the constitutional principles invoked by defendant preclude the ordered disclosures, nor does the attorney–client privilege. Thus, the information at issue is as described in the Criminal Rules Task Force report: the State has an overwhelming need for the information, and the relevant privileges generally accorded an accused do not provide protection from disclosure. Under these circumstances, neither should the work product doctrine (if otherwise implicated) provide protection from disclosure of a psychiatrist's report on defendant's insanity and the psychiatrist's testimony relating to

his findings and the basis for his conclusions. *See* Tomlinson, *Constitutional Limitations on Prosecutorial Discovery*, 23 San Diego L. Rev. 993, 1050 (1986).[5]

We recognize, nonetheless, that the work product doctrine does apply to some extent in this case. While it does not preclude disclosure of the psychiatrist's factual findings and opinions on the issue of defendant's insanity, it does operate to preclude disclosure of defense counsel's "opinions, theories or conclusions." *See State v. Yates*, 111 Wn.2d 793, 801, 765 P.2d 291 (1988). The trial court excluded from disclosure any letters or communications between Dr. Harris and defense counsel. It appears that this exclusion was intended to protect this type of information from disclosure, and we agree that this limitation is appropriate. *See People v. Edney*, 39 N.Y.2d 620, 350 N.E.2d 400, 403, 385 N.Y.S.2d 23 (1976). While it seems doubtful that Dr. Harris' psychiatric reports would contain any such information, if defendant believes they do he may request the trial court to examine the materials in camera and to protect any such work product from disclosure.

---

[5]In reaching this conclusion we note that there appears to be a question whether facts and opinions obtained by a defense–retained expert actually constitutes "work product." The language in CrR 4.7(f)(1) referring to "legal research" and "opinions, theories or conclusions" arguably does not encompass the objective observations and reports of a retained psychiatrist. *See, e.g., Morris v. State*, 59 Md. App. 659, 669, 477 A.2d 1206 (1984) (work product doctrine intended to protect and act as limitation on pretrial discovery of attorney's strategies, legal theories, and mental impressions, and was never intended as an evidentiary privilege, as evidenced by Maryland rule granting the State pretrial discovery of written reports of defense experts who will be called as witnesses at trial).

The parties have not addressed the question under CrR 4.7.

In the civil context, facts known and opinions held by a party's expert who is not expected to be called at trial as a witness are sometimes referred to as work product. However, CR 26(b)(4) is modeled after Fed. R. Civ. P. 26(b)(4), and the comments to the federal rule disclose that the rule rejects as

> ill–considered the decisions which have sought to bring expert information within the work–product doctrine. . . . The provision adopts a form of the more recently developed doctrine of "unfairness."

*Crenna v. Ford Motor Co.*, 12 Wn. App. 824, 830, 532 P.2d 290 (quoting 4 J. Moore, *Federal Practice* ¶ 26.01[18], at 26–51 (2d ed. 1974) (quoting Fed. R. Civ. P. 26(b)(4) advisory committee note to 1970 amendment)), *review denied*, 85 Wn.2d 1011 (1975).

## DUE PROCESS

Defendant maintains that his constitutional rights to due process and fundamental fairness would be violated if the State were allowed to use against him statements made to a defense consulting psychiatrist in justifiable reliance on the attorney–client privilege and his right to counsel. In that we have rejected defendant's claims that the statements are protected by either the attorney–client privilege or the right to counsel, it follows that we also reject defendant's due process claim.

In conclusion, we uphold the order compelling discovery and permitting the State to call Dr. Harris as a witness. The defendant may, however, request in camera examination of Dr. Harris' reports if he believes they describe the type of work product which we have explained should be protected, and the trial court should protect such work product from discovery should it be found in the reports. We emphasize that, as the trial court further ordered, the information provided to the State pursuant to the order is to be utilized at trial only if expert testimony of a psychiatrist in support of an insanity defense is presented before the jury, for the purpose of rebutting the insanity defense.

CALLOW, C.J., and DOLLIVER, DORE, ANDERSEN, and DURHAM, JJ., concur.

UTTER, J. (dissenting)—I have little sympathy for the defendant. Nonetheless, I dissent.

The criminal rules do not authorize discovery of the results of a defense psychiatrist's examination unless the defense intends to rely upon the expert at trial. This court should not rewrite the rules of criminal discovery in the middle of a murder trial because counsel was entitled to rely on those rules in planning strategy for this case. Because insanity defenses are only successful in about 1 percent of the cases in which they are asserted,[6] no need

---

[6]Freeman & Roesch, *Mental Disorder and the Criminal Justice System: A Review,* 12 Int'l J.L. & Psychiatry 105, 108 (1989).

exists to correct any imbalance by *ad hoc* amendment of the criminal rules.

The majority justifies its amendment of the criminal rules and its rejection of the attorney–client privilege by suggesting that nontestifying defense psychiatrists are a uniquely accurate source of information on the sanity of defendants. See majority, at 474–75. The majority's holding that the attorney–client privilege does not protect defense consultations with its nontestifying psychiatrist virtually guarantees that this supposedly unique source of accurate information will dry up. After today's decision, counsel will often refrain from consulting experts who might be inclined to find sanity in their clients.

The attorney–client privilege should apply here. The majority's holding greatly interferes with defense counsel's ability to effectively advise clients needing expert assistance. But it procures no benefit for the State save additional evidence obtained from an unwary defendant in this case. No precedent requires this result and our court rules, properly read, preclude it.

Most courts have recognized that the attorney–client privilege must apply to defense psychiatrists not relied upon at trial. The American Bar Association has recommended that the attorney–client privilege attach to communications between a psychiatrist and a client, but that courts find a waiver when the defense relies on the expert at trial or exhibits bad faith by securing evaluations of every available expert. We should adopt the ABA Criminal Justice Mental Health Standards on the privilege issue and recognize that the criminal rules do not authorize the discovery sought in this case.

# I

The criminal rules and the statute governing the insanity defense provide a satisfactory framework for obtaining information about a defendant's mental condition when the

defendant pleads insanity. *See* CrR 4.7; RCW 10.77. Neither the statute nor the rules authorize the disclosures sought in this case.

The statute establishes the prosecutor's right to have a psychiatrist approved by him or her examine the defendant. RCW 10.77.060(1); CrR 4.7(b)(2)(viii). Moreover, the prosecutor has the right to the names and addresses of any psychiatrist the defense calls as a witness along with copies of that psychiatrist's reports or testimony. CrR 4.7(g); CrR 4.7(b)(1). The prosecution has not availed itself of its right to have a psychiatrist of its choosing interview the defendant. Instead, the prosecutor seeks discovery of a defense psychiatrist who the defense does not plan to call at trial.

CrR 4.7(g), which governs the prosecution's discovery rights, only authorizes discovery of statements of experts *"which the defendant intends to use at a hearing or trial."* (Italics mine.) The omission of any authority to compel discovery of defense experts which the defense does not choose to rely upon at trial contrasts sharply with the rule governing defense discovery of prosecution experts. That rule requires disclosure to the defense of "any reports or statements of experts *made in connection* with the particular case, including results of . . . mental examinations . . .". (Italics mine.) CrR 4.7(a)(1)(iv).

These rules clearly are reciprocal in the sense that they obligate both the defense and the prosecution to provide some information regarding mental examinations. They do not, however, make the defense's obligations equal to those of the prosecution. Rather, the rules require the prosecutor to disclose expert reports *"made in connection with the . . . case"*, *i.e.,* including reports which will not be used at trial, while the rules expressly limit the defense's obligation to disclosure of material *"which the defendant intends to use at . . . trial."* (Italics mine.)

As we have noted, CrR 4.7 is analogous to Fed. R. Crim. P. 16. *State v. Hutchinson,* 111 Wn.2d 872, 878, 766 P.2d 447 (1989). Rule 16 allows both the defense and the prosecution to take advantage of discovery. *See Hutchinson,* at

878 (citing 2 C. Wright, *Federal Practice* § 254, at 64–65 (1982)). Rule 16 limits the prosecutor's discovery rights in the same manner as CrR 4.7(g); it limits discovery of the "results or reports of . . . mental examinations" to those documents "which the defendant intends to introduce as evidence in chief at the trial or which were prepared by a witness whom the defendant intends to call . . .". Fed. R. Crim. P. 16(b)(1)(B). *See* CrR 4.7(g). Accordingly, it does not authorize disclosure of a defense psychiatrist's interviews when the defense does not intend to call the psychiatrist to testify. *United States v. Layton,* 90 F.R.D. 520, 522 (N.D. Cal. 1981).

Our decision in *Hutchinson* should compel us to hold that our rules mean what they clearly say; the prosecutor has no right to discovery of statements which the defense does not intend to use at trial. *State v. Hutchinson, supra.* In *Hutchinson,* we interpreted CrR 4.7(g), the rule governing discovery of defense experts. We unanimously concluded that the rule did not require defense lawyers to prepare reports for use by the prosecution. *Hutchinson,* at 876–79. Our reasoning was simple. Since the rule did not state that the trial court could compel the discovery sought, no authority existed. We relied on rules of statutory construction which provided that clear language does not permit interpretation. *Hutchinson,* at 877. Similarly, CrR 4.7 does not authorize the discovery of a nontestifying defense expert. Therefore, *Hutchinson* requires us to hold that the criminal rules do not authorize the disclosure sought in this case.

The majority recognizes the implications of *Hutchinson* and holds that CrR 4.7(g) does not authorize the discovery sought in this case. Majority, at 472. The majority also recognizes that the trial court cannot order discovery exceeding the scope of the rules. This principle has commanded the allegiance of every member of this court. *See Hutchinson* (discovery of expert reports not yet made unavailable because rule does not authorize it); *State v. Yates,* 111 Wn.2d 793, 765 P.2d 291 (1988) (majority holding that CrR

4.7(b)(2)(x) authorizes discovery, dissent arguing that it does not; neither side arguing for inherent trial court authority to exceed scope of the rules). The drafters of the rule "explicitly rejected the notion of 'unconditional' discovery" when it drafted the provisions we are interpreting. Criminal Rules Task Force, *Washington Proposed Rules of Criminal Procedure* 77 (West Pub'g Co. ed. 1971).

The majority avoids the conclusion compelled by its correct interpretation of the rules governing disclosure of expert testimony by arguing that CrR 4.7(b)(2)(x) authorizes the discovery sought here. This rule allows "inspection of . . . documentary evidence in defendant's possession". CrR 4.7(b)(2)(x). Our precedent precludes interpreting this general provision so broadly that it makes the restrictive language in the specific rule governing discovery of defense experts meaningless. Provisions in a criminal rule must be read together in such a way as to make no language superfluous. *Snow's Mobile Homes, Inc. v. Morgan,* 80 Wn.2d 283, 288, 494 P.2d 216 (1972) (courts must interpret statutes so that "no portion . . . is superfluous, void, or insignificant"); *Hutchinson,* at 877 (rules of statutory construction apply to court rules). The majority voids the phrase limiting the trial court's authority to require disclosure of defense experts' reports to statements of experts *"which the defendant intends to use at a hearing or trial."* (Italics mine.) CrR 4.7(g). Indeed, the majority's "construction" makes all of CrR 4.7(g), the rule governing discovery of defense experts' documents, superfluous.

The policy reasons supporting disclosure of defense experts' opinions which the defense does not plan to use at trial do not justify rewriting the rules of criminal procedure in the middle of a murder trial. The majority argues that "the defendant is the sole source of evidence on his sanity". Majority, at 475. Therefore, the prosecution operates at a disadvantage with respect to the insanity defense and the court must remedy this by providing the prosecution with copies of the reports of defense–retained experts. Majority, at 475.

The defendant is not the sole source of information about his sanity. The prosecution is free to call people who knew Mr. Pawlyk to testify. The majority's statement to the contrary contradicts our holding that all information about a defendant's life is relevant to the insanity defense. *State v. Huson*, 73 Wn.2d 660, 665–67, 440 P.2d 192 (1968) (admission of prior conviction upheld), *cert. denied*, 393 U.S. 1096 (1969).

Nor is the nontestifying defense psychiatrist the only source of information regarding the defendant's sanity with access to the defendant. The prosecution may have its psychiatrist examine the defendant in order to reach its own conclusions about the defendant's sanity.

Nor should we assume that the defense psychiatrist not called to testify has accurate evidence, while the prosecution's expert and the defense's testifying expert provide inaccurate information. *Cf.* majority, at 474–75. Rather, most experts will give their candid assessment of the defendant's sanity. Those that do not will be exposed on cross examination. The fact that experts vary in their assessments does not indicate that the expert consulted but not used by the defense has the most "accurate" evidence. Our interpretation of the rules must reflect faith in the adversary process, not a conviction that the prosecution is always right and must be helped lest the defense prevail. In any case, after today's holding, many defense attorneys will not consult experts likely to tell them news they do not want to hear.

Nor does the prosecution operate at a great disadvantage when an insanity defense is raised. In fact, the prosecution has an advantage in resisting an insanity defense usually unavailable to it in a criminal trial, a favorable burden of proof. The defense must prove insanity by a preponderance of the evidence. RCW 10.77.030(2). Moreover, juries are apt to be skeptical of an insanity defense. The defense is only successful in about 1 percent of the felony trials in which it is raised. Freeman & Roesch, *Mental Disorder and the*

*Criminal Justice System: A Review,* 12 Int'l J.L. & Psychiatry (1989).

Reading the criminal rules properly does not prevent the prosecution from contesting the defendant's insanity plea. It only prevents the prosecution from taking advantage of the strategic opportunity presented by contacting the psychiatrist the defense had consulted.

The majority's holding interferes with counsel's ability to advise the defendant properly. The defense attorneys in this case did what good attorneys should do when advising clients about the insanity defense. They procured the opinions of two experts with contrasting points of view.

The State has a significant interest in encouraging complete pretrial evaluation of a possible insanity defense. A defense lawyer who has consulted two experts is more likely to spot a frivolous claim and recommend a more fruitful strategy. On the other hand, the State has an interest in hearing meritorious insanity defenses well presented with the weaknesses and difficulties thought out ahead of time. The State would rather treat than imprison the criminally insane. *See generally* RCW 10.77. A trial court may commit any insane defendant who is dangerous to others to a mental institution for a period equal to the prison term he or she would have received had the insanity defense been rejected, and the court can civilly commit an insane criminal for an even longer period thereafter. RCW 10.77.020(3).

The majority's holding will discourage counsel from consulting any expert which it anticipates will prove skeptical of its insanity defense. This frustrates the purposes of the adversary process which defense counsel should serve.

My analysis of the criminal discovery rule, CrR 4.7, is wholly independent of my analysis of the scope of the attorney–client privilege in the wake of *Bonds. State v. Bonds,* 98 Wn.2d 1, 653 P.2d 1024 (1982), *cert. denied,* 464 U.S. 831 (1983). We could reverse the trial court solely on the grounds that the criminal rules do not authorize the discovery sought and not reach the question of attorney–client privilege. *Bonds* does not preclude a proper reading

of the criminal rules. Because that case dealt with the decision to call a defense psychiatrist as a witness, we had no occasion to address the applicability of the rules of discovery to psychiatric testimony in that case.

## II

The attorney–client privilege should shield the client's communications with the defense psychiatrist from disclosure as well. *State v. Bonds, supra,* does not require this court to hold that the privilege does not apply to the reports of a defense expert on insanity not called as a witness. Nor does policy support the majority's extension of *Bonds* beyond the facts of the case.

As the majority notes, the defendant in *Bonds* called the psychiatrist to testify. We unanimously agreed that the trial court's decision to allow the psychiatrist to testify was proper. Five members of this court stated that the attorney–client privilege should not extend to the testimony of a psychiatrist when the issue of insanity is raised by the defense. *Bonds,* at 22. Four Justices concurred in holding that Bonds' psychiatrist's testimony was admissible, but pointed out that the majority's reasoning was unnecessarily broad. *Bonds,* at 22, 29–30 (Utter, J., concurring on this issue). Because the defense had put the psychiatrist on the stand, traditional waiver principles would suffice to defeat the attorney–client privilege in *Bonds. See Martin v. Shaen,* 22 Wn.2d 505, 156 P.2d 681 (1945); *Bonds,* at 29 (Utter, J., concurring on this issue).

We have held that statements "not necessary to the decision of any issue in the . . . case" are dicta which do not control future cases. *Gilmour v. Longmire,* 10 Wn.2d 511, 516, 117 P.2d 187 (1941). Moreover, we have delineated the precise holding of *Bonds* in *Hutchinson.* We unanimously agreed that *Bonds* "held that a psychologist who had examined a juvenile and *testified* in his favor at a decline hearing could be called by the State to testify at the juvenile's trial as an adult to rebut the insanity defense." (Italics mine.) *Hutchinson,* at 882. It follows that the

broader statements upon which the majority relies are dicta.

We have in the past recognized that overly broad general statements do not bind this court. In *Peterson v. Hagan*, 56 Wn.2d 48, 351 P.2d 127 (1960), we repudiated statements in prior opinions that the Fourteenth Amendment does not apply to legislation enacted under the police power. We held that "general expressions in every opinion are to be confined to the facts then before the court" and are "limited in their relation to the case then decided and to the points actually involved." *Peterson,* at 53 (citing *Cohens v. Virginia,* 19 U.S. 264, 5 L. Ed. 257 (1821) and five Washington cases). Our decision in *Peterson* compels the narrow characterization of the holding we unanimously accepted in *Hutchinson.*

Because the majority carefully considered its statements in *Bonds,* I agree that this dicta, although not binding, must be given substantial weight. The rationale offered in *Bonds,* however, conflicts with precedent and must be repudiated.

The attorney–client privilege exists in order to allow the client to communicate freely with the attorney without fear of compulsory discovery. *State ex rel. Sowers v. Olwell,* 64 Wn.2d 828, 394 P.2d 681, 16 A.L.R.3d 1021 (1964); *Pappas v. Holloway,* 114 Wn.2d 198, 203, 787 P.2d 30 (1990) (privilege encourages free and open communications by assuring that communications will not be disclosed to others directly or indirectly). The attorney–client privilege extends to the agents of an attorney. *State v. Jones,* 99 Wn.2d 735, 749, 664 P.2d 1216 (1983) (psychiatrist); *United States v. Kovel,* 296 F.2d 918, 920–23 (2d Cir. 1961) (accountant); *Brown v. State,* 448 N.E.2d 10, 14 (Ind. 1983); 8 J. Wigmore, *Evidence* § 2301, at 583 (1961). A defense psychiatrist is an agent of the attorney. *Jones,* 99 Wn.2d at 749–50. *Accord, Miller v. District Court,* 737 P.2d 834, 838 (Colo. 1987); *People v. Lines,* 13 Cal. 3d 500, 510, 531 P.2d 793, 199 Cal. Rptr. 225 (1975); *Houston v. State,* 602 P.2d 784, 789–90 (Alaska 1979); *State v. Pratt,* 284 Md. 516, 520–21, 398

A.2d 421 (1979). If it did not extend to an attorney's agent, an attorney could not adequately advise clients where expert assistance was needed.

Judge Weinstein, a distinguished jurist and author of a treatise on evidence, explained that, "Only a foolhardy lawyer would determine tactical and evidentiary strategy in a case with psychiatric issues without the guidance and interpretation of psychiatrists . . .". *United States ex rel. Edney v. Smith,* 425 F. Supp. 1038, 1047 (E.D.N.Y. 1976), *aff'd,* 556 F.2d 556 (2d Cir.), *cert. denied,* 431 U.S. 958 (1977). Accordingly, Judge Weinstein agreed that the privilege should protect a defense psychiatrist's communications with the client, just as it protects communications with other agents. *Edney,* at 1048. The proposition that the attorney–client privilege applies to a client's communications with an agent of the attorney appears to have universal acceptance. 8 J. Wigmore, at 583.

Historically, the privilege has always protected an accused criminal's consultations with an attorney in contemplation of a defense. *See* Hazard, *An Historical Perspective on the Attorney–Client Privilege,* 66 Calif. L. Rev. 1061, 1062 (1978). Exceptions, however, sometimes allow disclosure of physical evidence or confidences which prevent enforcement of a judicial order or pertain to a crime about to be committed. *See, e.g., Dike v. Dike,* 75 Wn.2d 1, 448 P.2d 490 (1968) (attorney must disclose whereabouts of a mother who thwarted an adverse custody award by kidnapping her child); *State ex rel. Sowers v. Olwell, supra* (attorney must turn over knife given him by client to the prosecution, but the prosecution may not state that it came from the lawyer).

The *Bonds* majority did not rely on any traditional exception to the attorney–client privilege. Instead, it analyzed the attorney–client privilege "as though it resulted in a clear loss of information that otherwise would be available to a court." Saltzburg, *Privileges and Professionals: Lawyers and Psychiatrists,* 66 Va. L. Rev. 597, 609–10 (1980). "Application of the attorney–client privilege to

communications such as those involved here, however, puts the adversary in no worse position than if the communications had never taken place." *Upjohn Co. v. United States,* 449 U.S. 383, 395, 66 L. Ed. 2d 584, 101 S. Ct. 677 (1980) (upholding application of privilege to Upjohn employees' communications to counsel). *See also* Saltzburg, *supra* at 610–11.

The majority applied a balancing test to the issue. It balanced the benefits of the privilege against the public interest of a full revelation of all the facts. *Bonds,* at 21.

This court should not accept the use of this balancing test because such a test would require attorneys to divulge any critical secret of a client which the prosecutor could not otherwise discover. The attorney–client privilege is based on a judicial policy choice that the interests of the adversary system require lawyers and their agents to be able to keep their clients' secrets, even if the public has a great interest in the information and it cannot be obtained from other sources. *Accord, Admiral Ins. Co. v. United States Dist. Court,* 881 F.2d 1486, 1494–95 (9th Cir. 1989). Moreover, once the privilege is eroded, the information will dry up.

The rationales which support the attorney–client privilege generally apply fully to consultations with a psychiatrist to evaluate an insanity defense. If a client had to fear that statements to the psychiatrist or the psychiatrist's impressions would be revealed even if defense counsel concluded that the expert would not be helpful, many lawyers would only consult experts apt to find insanity.

The *Bonds* majority relied principally upon the logic of a law review article by Professor Saltzburg. *Bonds,* at 21. But the American Bar Association has found the position defended by Professor Saltzburg unpersuasive because it confuses the rationales supporting the physician–patient privilege with those supporting the attorney–client privilege. American Bar Association, *Criminal Justice Mental Health Standards* 86 n.20 (1989). Professor Saltzburg explained the rationales supporting the attorney–client

privilege and then failed to consider their applicability in the portion of his article which supports the majority's conclusion. Importantly, Saltzburg explained that the privilege creates a zone of privacy in which information is developed which would not otherwise exist. Saltzburg, *supra* at 609–10. Indeed, he cites our decision in *Olwell* to support his point. In *Olwell,* we held that a defense attorney must turn over a murder weapon given him by the client, but need not reveal the source. *State ex rel. Olwell v. Sowers, supra.* Saltzburg derives from this case the principle that the privilege enables an attorney to create new information, but it does not enable counsel to hide preexisting information. Saltzburg, *supra* at 611. This principle would forbid discovery of any defendant's statements to a defense psychiatrist.

Saltzburg, however, ignores the rationales associated with the attorney–client privilege when he discusses his reasons for allowing discovery of defense psychiatrists. Saltzburg, *supra* at 635–42. Instead of considering the fact that the information created by confidentiality would not be available without it, he creates an argument which suggests that the privacy rationale associated with the doctor–patient privilege does not apply when the insanity defense is raised. *See* Saltzburg, *supra* at 634–35. *Cf.* Saltzburg, *supra* at 609–10. The *Bonds* court summarized and relied on the unconvincing rationales Saltzburg offered for its conclusion. *Bonds,* at 21. The court approved of Saltzburg's argument that the defense psychiatrist is likely to be more accurate on the issue of insanity than the prosecutor–approved psychiatrist, that the defendant might benefit from tailoring his responses during repeated examinations, and that the defendant will cooperate more fully with the defense psychiatrist.

The fact that juries only acquit 1 percent of the felons who plead insanity suggests that Saltzburg's unsupported empirical observations are not correct. The court also stated that the defense examination occurs at a time much

closer to the offense. *Bonds,* at 21. No empirical data supports that statement, Saltzburg qualified it in his article, and other commentators doubt its accuracy. Saltzburg, *supra* at 638 n.141; Mosteller, *Discovery Against the Defense: Tilting the Adversarial Balance,* 74 Calif. L. Rev. 1567, 1680 (1986). Because the defense must announce an insanity defense within 10 days of arraignment in Washington, it is unlikely that a significant period of time will elapse between the defense consultations and the prosecution examination. *See* CrR 4.2(c). Even if Saltzburg's unsupported empirical observations were correct, they could not be accepted by a court committed to the attorney–client privilege generally. The defense attorney is likely to have a more accurate view of his client's guilt or innocence; the defendant is apt to tailor his response during repeated questioning; the defendant will cooperate more fully with the defense attorney. Yet, the privilege still protects the lawyer from testifying about the client's statements. The law has traditionally considered this necessary in order to allow free consultation with the defense attorney and the attorney's agents.

Even if the defendant is today more likely to be candid with the defense–retained psychiatrist, he or she will not be tomorrow. Once a defendant is advised that communications with the psychiatrist will be discoverable, even if counsel decides not to put the psychiatrist on the stand, the client's incentive to be especially candid with the defense–retained psychiatrist will disappear.

The *Bonds* majority supported its dubious and unnecessary conclusion with the statement that "every act of the defendant's life was admissible" once he pleaded insanity. *Bonds,* at 22. The court took this statement out of its context in *State v. Huson,* 73 Wn.2d 660, 665–67, 440 P.2d 192 (1968), *cert. denied,* 393 U.S. 1096 (1969). The *Huson* court upheld various trial court evidentiary rulings on grounds of relevancy. *Huson* involved no claim of privilege and its citation in *Bonds* was inappropriate. Taken literally, the statement that "every act of the defendant's life was

admissible" means that no attorney–client privilege exists at all in a case involving an insanity defense and that unconstitutionally procured evidence could be admitted as well. The majority should limit this dicta rather than reemphasize it, lest the lower courts feel compelled to order discovery of all of a client's communications with his or her attorney or conclude, incorrectly, that no constitutional rights exist once insanity is pleaded. *Cf.* majority, at 463.[7]

Most courts have recognized that the attorney–client privilege must apply to defense psychiatrists not relied upon at trial. *Haynes v. State,* 103 Nev. 309, 317, 739 P.2d 497 (1987); *Miller v. District Court,* 737 P.2d 834, 836 (Colo. 1987). *See, e.g., United States v. Alvarez,* 519 F.2d 1036, 1045–47 (3d Cir. 1975); *Houston v. State,* 602 P.2d 784 (Alaska 1979); *People v. Lines,* 13 Cal. 3d 500, 510, 531 P.2d 793, 119 Cal. Rptr. 225 (1975); *State v. Pratt,* 284 Md. 516, 398 A.2d 421 (1979); *State v. Kociolek,* 23 N.J. 400, 414–17, 129 A.2d 417 (1957). The American Bar Association has developed standards adequate to meet the real problems which might support deviation from the majority rule. *See* American Bar Association, *Criminal Justice Mental Health Standards,* Std. 7–3.3(b), at 80 (1989). Under these standards, the attorney–client privilege attaches to communications between a client and a defense psychiatrist. The defense waives that privilege if it puts that psychiatrist on the stand or if it exhibits bad faith by securing evaluations from every available qualified expert. We should repudiate the dicta in *Bonds* and adopt the ABA standards.

### III

Since the majority amends the criminal rules and concludes that the attorney–client privilege does not apply here, it addresses the work product doctrine. I agree that defense counsel's "opinions, theories or conclusions" are not

---

[7]The majority cites *State v. Music,* 79 Wn.2d 699, 711–12, 489 P.2d 159 (1971), *vacated on other grounds,* 408 U.S. 940 (1972), for this proposition as well. *Music* also does not address any question of privilege.

subject to disclosure. I cannot, however, agree that the doctrine affords a criminal defense attorney narrower protection than that afforded a lawyer in a civil case.

Courts have recognized that the work product doctrine is more important in the context of a criminal proceeding than in the context of a civil proceeding. E. Epstein & M. Martin, *The Attorney–Client Privilege and the Work–Product Doctrine* 105 (2d ed. 1989). Defense counsel has a particular need to "work with a certain degree of privacy and plan strategy without undue interference" when deciding whether to pursue an insanity defense, because defense counsel must decide whether to rely on an insanity defense within 10 days of arraignment absent a showing of good cause. CrR 4.2(c). *See Coburn v. Seda,* 101 Wn.2d 270, 274, 677 P.2d 173 (1984).

Generally, the work product doctrine protects witness statements gathered by a lawyer in preparation for litigation absent a showing of particular need. *Hickman v. Taylor,* 329 U.S. 495, 508–14, 91 L. Ed. 2d 451, 67 S. Ct. 385 (1947). It also protects the work product of the attorney's agents in a criminal case. *United States v. Nobles,* 422 U.S. 225, 238–39, 45 L. Ed. 2d 141, 95 S. Ct. 2160 (1975). A defense psychiatrist is an agent of the attorney. *State v. Jones,* 99 Wn.2d 735, 664 P.2d 1216 (1983). Under Washington law, "there is no distinction between attorney and nonattorney work product." *Heidebrink v. Moriwaki,* 104 Wn.2d 392, 396, 706 P.2d 212 (1985).

Because the prosecution has not had its own psychiatrist interview Pawlyk, it cannot claim a compelling need for this information. We should not assume a priori that such an interview will not produce enough useful information to enable the prosecution to adequately prepare its case. *Cf.* majority, at 477 n.4.

The majority's rejection of the applicability of CR 26(b)(4)(B) suggests that the prosecution need not show exceptional circumstances to obtain discovery of defense experts not testifying at trial. See majority, at 477. CR 26(b)(4)(B) requires a party seeking discovery of another

party's expert to show that facts or opinions on the same subject cannot be obtained by other means.

In spite of the fact that the reasons for the work product doctrine are most compelling in the criminal context, the majority refuses to apply this principle here. It relies principally on our statement in *State v. Gonzalez*, 110 Wn.2d 738, 744, 757 P.2d 925 (1988) that the civil rules apply only to civil cases. Majority, at 476. In *Gonzalez*, we admitted, in the sentence following the sentence cited by the majority, that "the civil rules can be instructive in matters of procedure for which the criminal rules are silent." *Gonzalez*, 110 Wn.2d at 744 (citing 4A L. Orland & D. Dowd, Wash. Prac., *Rules Practice* §§ 6101, 6142 (3d ed. 1983) and *Mark v. KING Broadcasting Co.*, 27 Wn. App. 344, 349, 618 P.2d 512 (1980), *aff'd on other grounds*, 96 Wn.2d 473, 635 P.2d 1081 (1981), *cert. denied*, 457 U.S. 1124 (1982)). We declined to apply a civil rule in *Gonzalez* because it directly contradicted a criminal rule governing the same matter. *Gonzalez*, 110 Wn.2d at 744. Moreover, we justified not applying the particular civil rule at issue in that case with the observation that "the scope of discovery allowable . . . in criminal cases historically has been more limited than in civil cases." *Gonzalez*, 110 Wn.2d at 744. The majority's argument makes discovery broader in the criminal context than in the civil context by narrowing the work product doctrine and conflicts with *Gonzalez* for that reason. This court has applied civil rules to criminal cases in the past, so we are not free to quote the sentence on which the majority relies out of context. *See State v. Scott*, 92 Wn.2d 209, 595 P.2d 549 (1979) (CR 60 controls in a criminal case). The case law on this point taken together supports application of the civil rules where the criminal rules are silent, but not when the criminal rule speaks directly to the point at issue. It also supports applying civil rules when doing so does not broaden criminal discovery.

The criminal rules are silent on the issue of whether the work product doctrine shields the opinions of defense

experts. CrR 4.7(f)(1) expressly applies only to "investigating or prosecuting agencies", not to defense attorneys. The drafters intended the words "investigating or prosecuting agencies" to apply to the prosecution, not the defense. Criminal Rules Task Force, *Washington Proposed Rules of Criminal Procedure* 83 (West Pub'g Co. ed. 1971) ("This section affords protection to a legitimate interest of the *prosecution*") (italics mine). The subsection's reference to an exception for obligatory disclosures of the prosecution and its omission of any reference to the corresponding section requiring disclosures by the defense shows that the drafters never envisioned this section as a complete statement of defense counsel's rights to invoke work product protection. *See* CrR 4.7(f)(1) (citing CrR 4.7(a)(1)(iv) but failing to cite CrR 4.7(g)). In all probability, the drafters never thought that the defense would need to invoke the work product doctrine, since a correct interpretation of the rules precludes disclosure of nontestifying defense experts. *See* CrR 4.7(g).

Even the majority's theory that CrR 4.7(f)(1) governs the scope of the work product doctrine available to defense attorneys without help of the civil rules or the common law cannot justify the conclusion that a defense expert's opinions are discoverable. If the majority is correct that the term "investigating agency" includes the defense, then CrR 4.7(f)(1) protects the opinions of the defense psychiatrist, who is an agent of the attorney. *See* CrR 4.7(f)(1). This rule does not exempt any defense work from its protection at all. It only exempts material discoverable under subsection CrR 4.7(a)(1)(iv). CrR 4.7(a)(1)(iv) applies only to the prosecution's work. CrR 4.7(f)(1) does not exempt the material discoverable under CrR 4.7(g), the section governing the defense's discovery obligations for expert testimony. *Cf.* majority, at 478. Moreover, even if the court were to amend CrR 4.7(f)(1) to somehow refer to CrR 4.7(g), as the majority does in its opinion, see majority, at 478, it still would not exempt a nontestifying defense psychiatrist's work from work product protection. The majority concedes

that CrR 4.7(g) does not make a defense expert's opinion discoverable when the defense does not plan to rely on that expert at trial. Majority, at 472, 478.

The work product doctrine protects the material sought here absent a showing of need. The prosecution may be able to show such need if it retains a psychiatrist who does not get Mr. Pawlyk's cooperation. Until such an event occurs, I cannot agree that the trial court may compel disclosure of the statements of a nontestifying defense psychiatrist. I agree, however, that the trial court must screen the material to avoid disclosure of the attorney's thoughts while preparing for litigation.

CONCLUSION

The criminal rules do not authorize the discovery sought in this case. We should not amend the criminal rules in the middle of a murder trial.

In addition, the attorney–client privilege and the work product doctrine apply here. The American Bar Association has developed well defined exceptions to the attorney–client privilege as applied to defense experts. These exceptions are not applicable here and the privilege should forbid revelations of the defendant's confidential communications with the psychiatrist.

SMITH and GUY, JJ., concur with UTTER, J.

Reconsideration denied March 7, 1991.