**FILED**
**MARCH 22, 2018**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34494-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| GLORIA MARIE MATHYER, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Gloria Mathyer was convicted of vehicular assault and vehicular homicide after her car collided with a motorcycle. One of the motorcycle's occupants died and the other was injured. Ms. Mathyer appeals her conviction, raising issues of juror bias, deprivation of the right to counsel, insufficiency of evidence and instructional error. We affirm.

No. 34494-1-III
*State v. Mathyer*

## FACTS AND BACKGROUND

We recount the facts and procedural history of Ms. Mathyer's case only as necessary to address the arguments raised on appeal. Our summary is taken entirely from the testimony at trial.

*The law enforcement investigation*

Ms. Mathyer's collision was first reported to law enforcement at 5:41 p.m. By the time officers arrived at the scene, Ms. Mathyer and the two victims were in various stages of medical care and hospital transport. Law enforcement did not speak with Ms. Mathyer at the scene or conduct any field sobriety testing.

A hospital nurse attending to Ms. Mathyer took a medical blood draw at 7:50 p.m. The nurse noted Ms. Mathyer's breath smelled of alcohol. The sample procured by the nurse revealed a high blood alcohol concentration (BAC) of "220." 2 Report of Proceedings (RP) (June 8, 2016) at 273-74.[1]

The first substantive contact between Ms. Mathyer and law enforcement occurred at the hospital. At approximately 8:55 p.m., a sheriff's deputy went to Ms. Mathyer's room and noted Ms. Mathyer had bloodshot and watery eyes, and constricted pupils. Ms. Mathyer's speech was slurred, it appeared she had dry mouth, and she smelled of

_____

[1] Ms. Mathyer agrees that the nurse's testimony should be interpreted to mean the test revealed a BAC of 0.22 grams per 100 milliliters. Appellant's Opening Br. at 9.

2

intoxicants. A second officer, Trooper Jeffrey Eifert, confirmed these observations. Neither officer conducted any sobriety testing at the hospital due to Ms. Mathyer's fragile medical condition. At 11:20 p.m., a sample of Ms. Mathyer's blood was collected pursuant to a search warrant. This sample revealed a BAC of 0.10 grams per 100 milliliters.

*Developments during trial*

At trial, the State's toxicologist testified about the significance of Ms. Mathyer's second blood sample (the sample procured via the search warrant). Using retrograde extrapolation, the toxicologist testified Ms. Mathyer's BAC would have been significantly higher than 0.10 within two hours of the collision. Specifically, the toxicologist determined Ms. Mathyer would have had a BAC between 0.14 and 0.18 at 7:20 p.m. The toxicologist also testified that Ms. Mathyer's blood sample showed the presence of methamphetamine.

At trial, both the State and defense sought to elicit testimony from Trevor Newbery, who had been retained by the defense as an accident reconstruction expert. The State wanted to call Mr. Newbery as a fact witness regarding statements made to him by Ms. Mathyer. Of interest to the State were descriptions of the accident by Ms. Mathyer and her admission that she had consumed alcohol prior to the collision. Mr. Newbery had considered Ms. Mathyer's statements in preparing his accident reconstruction report. The

substance of the statements had been disclosed during pretrial discovery. The trial court

permitted the State's line of inquiry.[2]

At the close of the first day of trial, a juror advised the court she knew one of the

State's witnesses, Trooper Eifert, from church. During a follow-up colloquy the next

morning,[3] the juror indicated she did not know Trooper Eifert well, but she knew he had

integrity and would tend to believe him. The trial judge asked the juror if she could base

her decision on the evidence at trial, not her familiarity with Trooper Eifert. The juror

responded she could. The juror said she understood Trooper Eifert could be wrong

"because obviously everyone can be wrong." 1 RP (June 8, 2016) at 99. The juror

explained she believed Trooper Eifert to be truthful, but she would be able to "hear all of

the evidence and put what he says in context." *Id.* Then the court asked the juror, "if you

were the defendant, would you want you, with these feelings, as a juror?" *Id.* at 99-100.

The juror responded in the affirmative. The court subsequently determined the juror

should remain on the case. Defense counsel did not object.

---

[2] The court considered allowing Mr. Newbery to testify during the State's case-in-chief. However, the court ultimately decided the State would be able to make its inquiry of Mr. Newbery through cross-examination during the defense case. If, despite assurances from the defense that it planned to call Mr. Newbery, the defense ultimately opted not to present Mr. Newbery's testimony, the court ruled it would allow the State to reopen its case-in-chief and present testimony from Mr. Newbery.

[3] The follow-up was prompted by the juror's question to the bailiff of whether she would be biased if she believed everything Trooper Eifert said.

No. 34494-1-III
*State v. Mathyer*

*The conclusion of trial*

After the close of the evidence, the jury was provided a set of instructions, including one based on a pattern instruction that is utilized when a defendant is (1) charged with vehicular homicide or vehicular assault, and (2) alleged to have committed the crime while under the influence. The instruction stated:

> A person is under the influence or affected by the use of intoxicating liquor or any drug when he or she has sufficient alcohol in his or her body to have an alcohol concentration of 0.08 or higher within two hours after driving as shown by an accurate and reliable analysis of the person's blood; or the person's ability to drive a motor vehicle is lessened in any appreciable degree as a result of intoxicating liquor or any drug or the combined influence or affected by intoxicating liquor or drug.

Clerk's Papers at 16; *see* 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 90.06, at 274 (4th ed. 2016). Not surprisingly, defense counsel did not object to this instruction, as it was also included in the defense's proposed jury instructions.[4]

The jury found Ms. Mathyer guilty of vehicular homicide and vehicular assault. It also found by special verdict that Ms. Mathyer was under the influence of intoxicating liquor or drugs, operated her vehicle in a reckless manner, and operated her vehicle with disregard for the safety of others. The court sentenced Ms. Mathyer to 173 months of

---

[4] The State requested the same instruction.

total confinement and 18 months of community custody.  Ms. Mathyer appeals.

ANALYSIS

*Juror bias*

Ms. Mathyer argues she was denied her constitutional right to a fair and impartial jury as a result of the trial court's failure to replace or excuse the juror who expressed familiarity with Trooper Eifert.  We review the trial court's decision to retain the juror for abuse of discretion.  *State v. Ashcroft*, 71 Wn. App. 444, 461, 859 P.2d 60 (1993).

We disagree with Ms. Mathyer's assessment that the juror in question was impermissibly biased.  Although the juror initially made some statements suggestive of bias, the court's colloquy confirmed the juror would be able to set aside her preconceived ideas about Trooper Eifert and assess the case according to the evidence produced at trial. We would note that the testimony elicited from Trooper Eifert was of limited significance and was not contested.[5]  The record does not support Ms. Mathyer's claim that she was deprived of her right to a fair and impartial jury.

*Right to counsel*

Ms. Mathyer claims the statements she made to Mr. Newbery were protected by attorney-client privilege.  Accordingly, she argues the court should not have permitted the

---

[5] Defense counsel only asked five questions of Trooper Eifert.

State to question Mr. Newbery about those statements at trial.

Ms. Mathyer misapprehends the nature of attorney-client privilege. A defense expert is not an attorney or an agent of the attorney and statements by the defendant to his or her expert are not protected by the attorney-client privilege. *State v. Pawlyk*, 115 Wn.2d 457, 463-64, 800 P.2d 338 (1990).

Nor were Ms. Mathyer's statements to Mr. Newbery protected as work product. In the criminal context, work product does not shield the defense from disclosing information from a defense expert except to the extent the expert has been privy to defense *counsel's* opinions, theories, or conclusions. *Id*. at 478-79. Furthermore, even when the work product doctrine applies, its privilege may be waived. *United States v. Nobles*, 422 U.S. 225, 239-40, 95 S. Ct. 2160, 45 L. Ed. 2d 141 (1975).

It is doubtful Ms. Mathyer's statements to Mr. Newbery ever qualified for work product protection. But to the extent they did, the privilege was waived. Once it learned of Ms. Mathyer's statements to Mr. Newbery through pretrial discovery, the State was entitled to call Mr. Newbery as a witness to Ms. Mathyer's party-opponent statements under ER 801(d)(2). The trial court did not err in permitting this testimony.

*Insufficiency of the evidence and instructional challenge*

Both Ms. Mathyer's crimes of conviction required proof she was under the influence of drugs or alcohol. RCW 46.61.520(1)(a), .522(1)(b). Under Washington law,

7

intoxication can be shown by proving a "person has, within two hours after driving, an alcohol concentration of 0.08 or higher as shown by analysis of the person's breath or blood made under RCW 46.61.506." RCW 46.61.502(1)(a).

The evidence was more than sufficient to show Ms. Mathyer's BAC was over 0.08 within two hours of the collision. According to the State's toxicologist, retrograde extrapolation showed Ms. Mathyer's BAC would have been between 0.14 and 0.18 within two hours of the collision.[6] There was nothing inappropriate about this testimony. RCW 46.61.502(4)(a); *State v. Wilbur-Bobb*, 134 Wn. App. 627, 632-33, 141 P.3d 665 (2006). The toxicologist's testimony need not have been based on a blood test performed within two hours of Ms. Mathyer's offense conduct. The whole point of retrograde extrapolation testimony is to allow the State to introduce evidence of a defendant's intoxication level when a test has been performed outside the two-hour window.

The toxicologist's retrograde extrapolation testimony provided the State sufficient evidence to show Ms. Mathyer was intoxicated. It also justified providing the jury with an instruction, explaining how intoxication can be established by proof of BAC.[7] Ms.

---

[6] As previously noted, the accident took place at approximately 5:41 p.m. The toxicologist was able to use retrograde extrapolation to determine Ms. Mathyer's BAC at 7:20 p.m.

[7] Because the jury instruction was proposed by both the defense and the State, the trial result would not have been different had defense counsel declined to request the instruction.

8

No. 34494-1-III
*State v. Mathyer*

Mathyer has not shown any cognizable error on appeal.

CONCLUSION

The judgment and sentence is affirmed. Ms. Mathyer's request to deny appellate costs is deferred to consideration by the court commissioner should the State seek costs.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____          _____
Fearing, C.J.                    Siddoway, J.

9