[No. 54423-9.   En Banc.   June 16, 1988.]

THE STATE OF WASHINGTON, *Appellant,* v. LEANDRO
OSUNA GONZALEZ, *Respondent.*

*James H. Kaufman, Prosecuting Attorney,* for appellant.

*Aitken, Schauble, Patrick, Neill & Charawell,* by *Bruce A. Charawell,* for respondent.

*Norm Maleng, Prosecuting Attorney, Robert S. Lasnik, Chief of Staff,* and *Rebecca J. Roe, Senior Deputy,* on behalf of Washington Association of Prosecuting Attorneys, amici curiae for appellant.

*Marcia B. Ruskin* and *Betsy R. Hollingsworth* on behalf of Northwest Women's Law Center, amici curiae for appellant.

*Patrick K. Stiley* and *Jeffry K. Finer* on behalf of Idaho–Washington Sexual Assault Coalition, Alternative to Violence, Complaining Witness, National Organization for Women, amici curiae for appellant.

DURHAM, J.—The issue in this case is whether an alleged rape victim is required to reveal the names of her previous sexual partners when questioned in a pretrial deposition. The State argues that Washington's rape shield statute, which limits questioning about sexual history at trial, should be extended to provide similar protections for pretrial discovery matters. RCW 9A.44.020. Although we determine that the rape shield statute itself is not applicable to discovery matters, we find that the statute's underlying policies are helpful in interpreting the body of law that does apply, *i.e.,* Washington's rules of criminal procedure. In the context presented here, these rules require the defendant to show that the requested information is material, and to show further that his interest in gathering exculpatory evidence outweighs the interests in protecting the alleged victim's privacy. We conclude that the defendant in the instant case has failed to show that the names of the alleged victim's sexual partners would be material to his defense.

## FACTS

The parties have stipulated to an agreed statement of the facts. On August 10, 1986, the complaining witness was 16

years old and lived with her mother in Lewiston, Idaho. She had a 1½–year–old child, born out of wedlock. On that day, she asked her mother for permission to go swimming with some friends. She was supposed to return home by 11 p.m. that evening. Around noon, she left with her friends. Instead of going swimming, they traveled to Pullman, Washington, where they went to a restaurant and then attended a barbecue and party at a friend's house.

At approximately midnight, the complaining witness and a friend, Eloisa Hidalgo, left the party, stating that they were going to spend the night at the home of the complaining witness' sister. The two girls began hitchhiking and were eventually picked up by Leandro Gonzalez, a 27–year–old acquaintance of Eloisa. The complaining witness had never met Gonzalez prior to that night. The three drove to Clarkston, Washington, where the girls went swimming at a local park. Eloisa's boyfriend, Roy Varner, joined them at the park. An altercation broke out between Gonzalez and Varner, after which Eloisa and her boyfriend left the company of Gonzalez and the complaining witness.

The defendant and the complaining witness disagree as to what happened next. The stipulation of facts reveals Gonzalez' version as follows:

> At this point, Leandro states that the complaining witness suggested that they go back to the park where they had initially been swimming. Leandro agreed and indicates that after arriving at the park, he and the complaining witness engaged in consensual sexual intercourse in the backseat of his automobile. Leandro further asserts that at the conclusion of their sexual relations, the complaining witness expressed concern that she might become pregnant due to the fact that he had not withdrawn soon enough and that she already had one baby. Leandro states that the complaining witness said, "Every time I do this I get pregnant." Leandro further asserts that the complaining witness advised him that she couldn't go home because she didn't have a good explanation for her whereabouts and her mother would be angry. Leandro asserts that she asked him to take her

to the Moscow–Pullman area so she could spend the night with her sister.

The stipulation presents the complaining witness's account of these events in the following manner:

> The complaining witness alleges that they did not go back to the park after Roy Varner and Eloisa exited Leandro's automobile. Instead, she claims that Leandro began to drive back to Pullman and said that he was going to drop her off there in order to teach Eloisa and Roy Varner a lesson. She further states that she wanted Leandro to drop her off at her home in Lewiston. However, it is not clear from the statement the complaining witness gave to the police how or when that was communicated to Leandro or that she protested when Leandro drove through Lewiston and up the grade to Pullman.
>
> . . .
>
> The complaining witness further alleges that on the way back to Pullman Leandro stopped his car on a rural road near Uniontown, Washington, where they had sexual intercourse. The complaining witness asserts that the sexual intercourse took place in the backseat of his car in essentially the same fashion as Leandro described took place at the park in Clarkston. However, the complaining witness claims she engaged in intercourse because she felt she was being threatened by Leandro, including the implied threat that he had a gun in the glove compartment.

Afterward, they went to Gonzalez' apartment in Pullman, the complaining witness alleging that she was forced to do so. Gonzalez twice left the apartment, once to get cigarettes from a neighbor and once to get a fan from another apartment. Gonzalez states that both trips were at the complaining witness's request and that both times she was left alone. The complaining witness asserts that she was left alone only once. They both fell asleep in his apartment.

In the morning, Gonzalez said he would take her home before going to work. On his way, he stopped at a gas station and began pumping gas. The complaining witness got out of the car and refused to rejoin the defendant. He left her there and went to work.

Gonzalez was charged with first degree rape and first degree kidnapping. At an omnibus hearing, Gonzalez sought permission to depose the complaining witness, to which the prosecutor did not object.

At her deposition, the complaining witness was asked to reveal the names of all individuals with whom she had previously engaged in sexual intercourse, consensual or otherwise. She refused to answer, even after being informed by the trial court that she could be jailed for civil contempt.

The defense moved to suppress the complaining witness's testimony at trial or alternatively to have her judged in contempt of court. The trial court concluded that her actions had "deprived [defense counsel] of the opportunity to make a reasonable investigation for purposes of developing evidence which would be admissible at a rape shield hearing and possibly at trial." The trial court also determined that the appropriate sanction was to suppress the complaining witness's testimony. In so holding, it noted that the practical effect of the court's ruling was to terminate the case against Gonzalez.

The State appealed this ruling to Division Three of the Court of Appeals. *See* RAP 2.2(b)(2). The case was transferred to this court pursuant to RCW 2.06.030.

## ANALYSIS

This case pits an alleged rape victim's interest in keeping private her past sexual behavior against a defendant's right to gather information in preparing his defense. The State, as well as amici curiae, contend that forcing a victim to answer such questions in a deposition will discourage rape prosecutions, contrary to the policy behind the rape shield statute. Gonzalez argues, on the other hand, that he must be allowed to inquire into the complaining witness's sexual history at the discovery level because of the heavy burden he faces in a rape shield hearing of proving that the complainant's past sexual behavior is admissible.

## A
### CRIMINAL DISCOVERY RULES

Discovery in criminal cases is governed by the Superior Court Criminal Rules. *See* CrR 4.5, 4.6 and 4.7. CrR 4.6(a), which deals specifically with depositions, provides:

Upon a showing that a prospective witness may be unable to attend or prevented from attending a trial or hearing or if a witness refuses to discuss the case with either counsel and *that his testimony is material* and that it is necessary to take his deposition in order to prevent a failure of justice, the court at any time after the filing of an indictment or information may upon motion of a party and notice to the parties order that his testimony be taken by deposition . . .

(Italics ours.) Thus, our threshold inquiry is whether the information Gonzalez seeks is material to his defense.

Gonzalez maintains that he need not show that the deposition answers would themselves be material to his defense; he argues that he need only show that the names of the complaining witness's sexual partners would be reasonably calculated to lead to material information. He intends to have an investigator contact the sexual partners in order to determine if any past events would be relevant to his contentions that the complainant consented to have sex with him and that she had a motive to falsely charge him with rape. To support his position, Gonzalez relies on Superior Court Civil Rule 26(b)(1), which provides in relevant part:

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party . . . *It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.*

(Italics ours.) This rule allows civil litigants to engage in broad discovery; that is, they can probe for weaknesses in

their opponents' positions without knowing that weaknesses actually exist. *See Bushman v. New Holland Div. of Sperry Rand Corp.,* 83 Wn.2d 429, 434, 518 P.2d 1078 (1974) (quoting *Hickman v. Taylor,* 329 U.S. 495, 507, 91 L. Ed. 451, 67 S. Ct. 385 (1947)).

The difficulty with Gonzalez' argument is that the civil rules by their very terms apply only to civil cases. CR 1; *State v. Christensen,* 40 Wn.2d 329, 242 P.2d 755 (1952) (CR 26 is inapplicable to criminal cases). Admittedly, the civil rules can be instructive in matters of procedure for which the criminal rules are silent. *See Mark v. KING Broadcasting Co.,* 27 Wn. App. 344, 349, 618 P.2d 512 (1980), *aff'd on other grounds,* 96 Wn.2d 473, 635 P.2d 1081 (1981), *cert. denied,* 457 U.S. 1124 (1982); 4A L. Orland & D. Dowd, Wash. Prac., *Rules Practice* §§ 6101, 6142 (3d ed. 1983). However, as noted above, CrR 4.6(a) is not silent as to the scope of allowable questions in a deposition, but indicates that only *material* information may be discovered by deposition. Even if that rule were silent, we would next look to the general criminal discovery rule, CrR 4.7, for clarification before looking to the civil rules. CrR 4.7 sets out the exact obligations of the prosecutor and defendant in engaging in discovery, the detail of which suggests to us that no further supplementation should be sought from the civil rules.

Additionally, the scope of discovery allowable through depositions in criminal cases historically has been more limited than in civil cases. For example, a court order is necessary before a deposition can be held in a criminal case, while the same is not true in a civil case. *Compare* CrR 4.6(a) *with* CR 26(b); Criminal Rules Task Force, *Washington Proposed Rules of Criminal Procedure,* Comments to rule 4.6(b), at 69 (West Pub'g Co. ed. 1971). Also, the relevant federal rule on criminal depositions, from which Washington derived CrR 4.6(a), authorizes the use of depositions only if a witness might not be available for future testimony; no similar authorization is provided for cases in which a witness refuses to talk to either attorney. Thus,

criminal depositions in federal cases are used primarily for the preservation of testimony, not for discovery purposes. Fed. R. Crim. P. 15(a); 2 C. Wright, *Federal Practice* § 241, at 4 (2d ed. 1982). When CrR 4.6(a) was first adopted in this state, its language in this regard was the same as the federal standard. *Proposed Rules,* Comments to rule 4.6(a), at 68. Washington has since amended CrR 4.6(a) so that a deposition in a criminal case need not be limited to perpetuation of testimony, because the rule now allows for a deposition in some cases where a witness refuses to talk with an attorney. The rule has not been amended, however, to loosen the materiality requirement in the same manner as CR 26(b).

Because of these significant differences between discovery in criminal and civil cases, and because the criminal rule already limits the scope of questioning to areas for which materiality has been shown, we are not persuaded that the "reasonably calculated to lead to the discovery of admissible evidence" language of CR 26(b) should be read into CrR 4.6(a). Accordingly, we will look only to CrR 4.6(a) in analyzing Gonzalez' showing of materiality.

■ Turning to that issue, Gonzalez first claims that the names of the complaining witness's sexual partners relate to his contention that the complaining witness might have falsely accused him of rape in order to escape punishment for being out all night. Even assuming that the complaining witness had a motive to falsely accuse Gonzalez, we fail to see how disclosing the names of her previous sexual partners will help Gonzalez' defense. There is nothing in the record that shows that the complainant had ever previously filed a rape complaint. To the contrary, the complaining witness represented to the court, through the prosecutor's offer of proof, that she had never lodged a rape complaint before this case arose. Investigation of official records in the four nearby counties confirmed that she had filed no other rape complaints there. Thus, a list of the complaining witness's sexual partners could not help to prove that she has accused him falsely.

Gonzalez' second justification for seeking the discovery relates to the consent issue. Obviously, a person's consent to sexual intercourse with one partner is not indicative of a general willingness to consent to intercourse with another individual. *State v. Hudlow,* 99 Wn.2d 1, 10–11, 659 P.2d 514 (1983). Indeed, it is "[o]nly in the *extreme* case of the indiscriminately promiscuous woman" that such evidence of prior consensual sexual relations could be probative in a rape case. (Italics ours.) *State v. Cecotti,* 31 Wn. App. 179, 182, 639 P.2d 243 (1982) (quoting 52 Wash. L. Rev. 1011, 1034 (1977)). Gonzalez would be allowed to introduce evidence of the complaining witness's sexual history at trial on the consent issue only if he could show that there existed a pattern of previous sexual activity that was sufficiently similar to the facts of the present case that it renders more likely the existence of consent in the present case. *Hudlow,* at 11. Therefore, the complainant's sexual past would become material only if she had a history of consenting to sex while hitchhiking with a stranger, or at least that she regularly had sex with strangers within a couple of hours of their meeting.

Gonzalez has not presented any evidence indicating that such a pattern exists. Admittedly, the complainant gave birth to a baby when she was approximately 14, indicating that she had had sex on at least one previous occasion. She also allegedly said that "[e]very time I do this I get pregnant". However, under *Hudlow,* a history showing that the complainant has previously engaged in sexual intercourse, by itself, is inadmissible in a rape trial. Nothing in this case suggests that the complainant has a history of indiscriminately promiscuous behavior.

In sum, Gonzalez has failed to show even threshold materiality as required by CrR 4.6(a). Thus, the trial court committed error in ordering that disclosure be made. Having resolved this issue, we need go no further.[1] However, in

---

[1]The State has argued that even if the complainant was properly required to reveal her sexual history, the trial court's remedy of suppressing her testimony

order to provide guidance to trial courts in this complicated and sensitive area, we offer some additional observations.

In the event that a defendant makes a threshold showing of materiality, disclosure is not necessarily automatic. Because the deposition of a rape complainant is being used for discovery purposes, the general rule on criminal discovery, CrR 4.7, is also applicable. Under CrR 4.7(h)(4), a trial court may regulate discovery at any time by issuing a protective order upon a showing of cause. Although this rule does not specify what constitutes a "showing of cause", generally the issue of when to protect an individual from discovery calls for a balancing of the interests at stake. For example, another provision of CrR 4.7 provides that trial courts may deny a discretionary discovery request if

> there is a substantial risk to any person of physical harm, intimidation, bribery, economic reprisals or unnecessary annoyance or embarrassment, resulting from such disclosure, which outweigh any usefulness of the disclosure to the defendant.

CrR 4.7(e)(2).

Accordingly, a defendant who makes a showing of materiality under CrR 4.6(a) is not entitled to discovery if the trial court determines that the harm to the complainant outweighs the usefulness of the requested information to the defendant. In turn, the discovery's usefulness will depend on the strength of the defendant's showing of materiality.

Such a balancing is especially appropriate in rape cases, given the powerful interests on each side of the issue. Rape victims obviously have a compelling interest in maintaining the privacy of their prior sexual relations. *See* Berger, *Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom,* 77 Colum. L. Rev. 1 (1977). The State's interest, derivative of the victims' interest, is equally compelling

---

was erroneous. Because we hold that the complainant's sexual history need not be revealed, we have no need to review the trial court's remedy.

in encouraging rape victims to notify the police and to testify against their assailants. *State v. Hudlow, supra* at 18. Additionally, the hardship to a rape victim, and the resulting deterrence in prosecuting sex crimes, is not significantly diminished by having the questions asked in the relatively private circumstances of a deposition rather than at a public trial. *State v. Miskell,* 122 N.H. 842, 846, 451 A.2d 383 (1982) ("Contrary to the defendant's assertion, the major harassment and embarrassment occurs because the victim must answer the questions, not because she must answer them in public."); *see also Priest v. Rotary,* 98 F.R.D. 755, 73 A.L.R. Fed. 736 (N.D. Cal. 1983) (holding in a civil case that the policy of protecting victims of sexual harassment from inquiries regarding their sexual history is equally applicable at the discovery stage and at trial). Encouraging rape victims to prosecute promotes the goal of truth finding in the courtroom, for truth cannot be revealed when rape remains a hidden crime.

Balanced against these interests is the chance that the defendant might be prevented from developing exculpatory evidence which would be admissible at trial. The defendant's interest in fully investigating every possible defense to the charges leveled against him is not to be lightly denied. Indeed, "the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker v. Wingo,* 407 U.S. 514, 532, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972); *see United States v. Valenzuela–Bernal,* 458 U.S. 858, 870–71, 73 L. Ed. 2d 1193, 102 S. Ct. 3440 (1982).

The balance of these interests, however, will vary greatly depending on the facts of any given case. The strength of the defendant's interest will, of course, depend on the degree to which he can show that the evidence will be material to his defense, and the strength of the complaining witness's interest will vary with the extent to which the questions require her to reveal sensitive elements of her previous sexual history. This test admits of no simple answers. However, it provides the framework for a fair resolution of a most difficult problem.

# B
## THE RAPE SHIELD STATUTE

In light of our holding under CrR 4.6(a), we specifically decline to adopt the State's position that Washington's rape shield statute, RCW 9A.44.020, applies in the context of pretrial depositions. While the statute clearly limits the admissibility *at trial* of a complaining witness's sexual history, *State v. Hudlow, supra,* it does not purport to address the same issues when they arise in discovery proceedings. The statute is phrased in terms of evidence's admissibility, not its discoverability. Moreover, nothing in the legislative history materials submitted to this court by the parties gives any indication that the Legislature intended the statute to be applied to discovery proceedings.

We note that the New Hampshire Supreme Court has used the very analysis that we have declined to adopt. In *State v. Miskell, supra,* the court construed its state's rape shield statute to apply to both discovery and trial proceedings, even though its statute like ours is phrased only in terms of admissibility. The court concluded that the New Hampshire Legislature intended to create a testimonial *privilege* for rape victims and that such a privilege applied to depositions as well as at trial. *Miskell,* at 845–46. The court did not explain why it should presume that the Legislature intended this broader application when the Legislature used only the term admissibility, a phrase relating only to procedures at trial.

New Hampshire is apparently the only state to apply its rape shield statute directly to discovery proceedings. Other states have instead turned to their court rules relating to discovery in determining such matters. *State v. Herrera,* 92 N.M. 7, 13–14, 582 P.2d 384 (Ct. App.), *cert. denied,* 91 N.M. 751 (1978); *State v. Poe,* 708 S.W.2d 723, 729–30 (Mo. Ct. App. 1986). Indeed, the New Mexico court specifically declined to apply its rape shield statute to pretrial proceedings. *Herrera,* at 13. We conclude that the approach taken in New Mexico and Missouri is better reasoned. Rather than construe a statute to apply to a situation for

which it was not necessarily intended, we choose to apply the rules already in place for regulating discovery. Using this approach, we can take into account the policy interests behind the rape shield statute, even if the statute itself cannot be applied.

## C
### Constitutional Rights to Discovery

█ Gonzalez also argues that he has a constitutional right to take the complaining witness's deposition. In some situations, a criminal defendant does have a constitutional right to discovery. *See Brady v. Maryland,* 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963). Nevertheless, this right has limits. The Supreme Court has held that

> [a defendant] cannot establish a violation of his constitutional right to compulsory process merely by showing that [he was deprived of certain] testimony. He must at least make some *plausible showing* of how [the] testimony would have been both material and favorable to his defense.

(Italics ours.) *United States v. Valenzuela–Bernal, supra* at 867. The Court reiterated this standard in *Pennsylvania v. Ritchie,* 480 U.S. 39, 94 L. Ed. 2d 40, 107 S. Ct. 989, 1002 n.15 (1987).

This court has twice set out a similar standard, holding that "'[t]he mere *possibility* that an item of undisclosed evidence *might* have helped the defense or *might* have affected the outcome of the trial . . . does not establish "materiality" in the constitutional sense.'" *State v. Bebb,* 108 Wn.2d 515, 523, 740 P.2d 829 (1987) (quoting *State v. Mak,* 105 Wn.2d 692, 704–05, 718 P.2d 407, *cert. denied,* 107 S. Ct. 599 (1986)).

In this case, Gonzalez has not made a plausible showing that the complaining witness's sexual history would be material to his defense. He has presented no indication that the current case even approaches the extraordinary case

where such evidence would become material.

Gonzalez also contends that he has a right under the state constitution to question the complaining witness about her sexual history. He bases this argument on the observation that the due process clause of our state constitution can be interpreted to provide greater rights than does the federal due process clause, even though they are similarly phrased, citing *State v. Bartholomew,* 101 Wn.2d 631, 683 P.2d 1079 (1984). It is true that *Bartholomew* holds that "the Supreme Court's interpretation of the Fourteenth Amendment does not control our interpretation of the state constitution's due process clause." *Bartholomew,* at 639. However, the cases relied on in *Bartholomew* for this proposition more fully state that because of the identity in textual language, "'the federal cases while not necessarily controlling should be given "great weight" in construing our own due process provision.'" *Olympic Forest Prods., Inc. v. Chaussee Corp.,* 82 Wn.2d 418, 422, 511 P.2d 1002 (1973) (quoting *Petstel, Inc. v. County of King,* 77 Wn.2d 144, 153, 459 P.2d 937 (1969)). In the context of the instant case, we see no reason to construe our state due process clause differently than that of the federal clause. Even if we were to hold that the state provision provided extra protection, we would not extend those protections to the facts of this case, in light of the speculative nature of the defendant's showing of materiality.

## CONCLUSION

A defendant charged with rape may not use the discovery process to probe the complainant's sexual history unless he can satisfy the materiality requirement under CrR 4.6(a). Because Gonzalez did not make the requisite showing of materiality, the complaining witness should not have been required to reveal the names of her previous sexual partners. Consequently, there is no basis for the trial court's

suppression order. The trial court's ruling is reversed and the case is remanded for further proceedings.[2]

PEARSON, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, CALLOW, and GOODLOE, JJ., concur.

---

[2]Some of the amici curiae argue in their brief that if the case is remanded, we should "order that [the complainant] be provided with the opportunity to secure independent counsel, including appointed counsel in the event that she is unable to afford a private attorney." Brief of Amici, at 19. However, we have many times held that arguments raised only by amici curiae need not be considered. *E.g., Coburn v. Seda,* 101 Wn.2d 270, 279, 677 P.2d 173 (1984); *Washington State Bar Ass'n v. Great Western Union Fed. Sav. & Loan Ass'n,* 91 Wn.2d 48, 59–60, 586 P.2d 870 (1978); *Long v. Odell,* 60 Wn.2d 151, 154, 372 P.2d 548 (1962). This principle is especially applicable where, as here, the issue being raised has not been adequately briefed. The amici assert, without any further analysis, that the due process clauses of the state and federal constitutions support their position. The opposing position has not been briefed at all. We decline to engage in constitutional analysis under such constraints. *See Meyer v. UW,* 105 Wn.2d 847, 855, 719 P.2d 98 (1986); *United States v. Phillips,* 433 F.2d 1364, 1366 (8th Cir. 1970) ("[N]aked castings into the constitutional sea are not sufficient to command judicial consideration and discussion.")