# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51298-0-II |
| Respondent, | |
| v. | |
| JOHN MICHAEL BROOKS, | UNPUBLISHED OPINION |
| Defendant. | |

SUTTON, J. — John M. Brooks appeals his jury trial convictions for two counts of first degree rape of a child. We hold that under RCW 2.28.150, the trial court had the authority to permit an adult witness to testify at a *Ryan*[1] child-hearsay hearing via Skype,[2] that the jury instructions as a whole ensured that Brooks was not denied his right to a unanimous verdict, and that defense counsel's failure to make a contemporaneous objection to the State's rebuttal argument was not deficient representation in light of defense counsel's post-argument objection and motion for mistrial. We further hold that Brooks's claims in his Statement of Additional Grounds for Review[3] (SAG) either have no merit or cannot be reviewed because they relate to matters outside the record. Accordingly, we affirm.

---

[1] *State v. Ryan*, 103 Wn.2d 165, 691 P.2d 197 (1984).

[2] "Skype is a live video chat and long-distance voice calling service." *In re Marriage of Swaka*, 179 Wn. App. 549, 551 n.1, 319 P.3d 69 (2014).

[3] RAP 10.10.

FACTS

I. Charges

In April 2016, six-year-old AB was living with her step-grandmother Sherri Brooks in Washington State because her father, Brooks, had moved to Virginia for a new job. Sherri[4] contacted law enforcement and reported that AB had disclosed that Brooks had been having inappropriate sexual contact with her.

The State charged Brooks with two counts of first degree rape of a child–domestic violence.

II. Motion To Present Skype Testimony at *Ryan* Hearing

In January 2017, the State moved to allow AB and her mother Randi, who were then living in Texas, to testify at the *Ryan* child hearsay hearing using Skype to avoid unnecessary travel. Counsel who was standing in for Brooks's original defense counsel responded that he did not object to the use of Skype testimony at the *Ryan* hearing.

Noting that the *Ryan* hearing was only an evidentiary hearing, the trial court granted permission for the Skype testimony "given the distances involved and the nature of the hearing." 1 Report of Proceedings (RP) (Jan. 10, 2017) at 5. The trial court also commented that "[t]he rules ha[d] changed to allow the [c]ourt to make this decision." 1 RP (Jan. 10, 2017) at 5.

The *Ryan* hearing was delayed by the departure of Brooks's original defense counsel and appointment of new counsel. Seven months after the trial court ruled on the Skype testimony, Brooks's new counsel objected to the trial court's ruling. The trial court characterized this objection as a motion for reconsideration.

---

[4] Because Sherri Brooks, AB's mother Randi Brooks, and Brooks share the same last name, we refer to Sherri and Randi by their first names to avoid confusion. No disrespect is intended.

At a hearing on the motion for reconsideration, defense counsel objected to the use of Skype testimony by AB, Randi, or AB's counselor Courtney Each at the *Ryan* hearing. The State asserted that Skype was appropriate because the *Ryan* hearing was merely an evidentiary hearing and the testimony at this hearing was not "evidence." 1 RP (Oct. 10, 2017) at 13.

In addressing witnesses other than AB, the trial court stated,

> I think that case law and the change of the court rule [sic] it's pretty clear that the [c]ourt can make that call based on a number of factors, including convenience to the [c]ourt, to the parties, and to the witnesses. Given that these witnesses are located, as I recall, in the State of Nevada[,] this is a relatively-short hearing that occurs well prior to the trial and makes it rather difficult to—for everybody here for both of those (sic).

1 RP (Oct. 10, 2017) at 13.

The trial court further stated that the witnesses were "some distance away" and the use of Skype did not change "the process for either party or for the fact finder." 1 RP (Oct. 10, 2017) at 14. The trial court also noted that Skype still offered Brooks "the full opportunity to question those individuals; everybody gets not only to hear what they have to say but to see them as they say it." 1 RP (Oct. 10, 2017) at 13-14.

### III. *RYAN* HEARING

AB, Each, Randi, Sherri, and forensic interviewers John Hancock and Samantha Mitchell testified at the *Ryan* hearing. Each, AB's therapist, was the only witness who testified by Skype.

The trial court ruled that AB was competent to testify. It also ruled that Each, Randi, Sherri, Hancock, and Mitchell could testify about AB's statements to them.

3

IV. TRIAL

At trial, AB, Sherri, Randi, Hancock, Mitchell, and Each testified for the State.  Brooks and his grandmother Beulah Brooks testified for the defense.

A.  STATE'S EVIDENCE

AB testified that Brooks had engaged in numerous separate incidents of sexual contact with her, including oral sex and penile/vaginal contact.

Sherri testified about AB's disclosures, which included statements that Brooks had engaged in cunnilingus and fellatio with AB, had rubbed his penis against her vagina and against her butt, and had engaged in intercourse with her.  Sherri also testified that around the time of the disclosures, AB had complained of a sore bottom and crotch.  When bathing AB, Sherri observed that AB's "crotch was red and raw."  6 RP (Nov. 1, 2017) at 149.  Additionally, Sherri stated that AB revealed that Brooks made her promise to keep their activities secret and that she (Sherri) had once overheard Brooks ask AB if their secret was still "safe."  6 RP (Nov. 1, 2017) at 153.

Randi testified that AB's normally "happy, joyful" demeanor changed after living with her father.  8 RP (Nov. 2, 2017) at 73.  Randi removed AB from Washington after learning of the sexual abuse allegations.  AB subsequently disclosed to Randi that Brooks had "had sex" with her.  8 RP (Nov. 2, 2017) at 77.  When Randi asked AB what she meant by "sex," AB had described vaginal intercourse.  8 RP (Nov. 2, 2017) at 77.  AB also revealed that Brooks had "taught her how to play with [her vagina] and use toys and stuff."  8 RP (Nov. 2, 2017) at 79.  Randi stated that since AB returned from living with Brooks, AB had been "acting out sexually."  8 RP (Nov. 2, 2017) at 82.

The State played Hancock's forensic interview with AB for the jury. During the interview, AB acknowledged that she and her father shared a secret, but she refused to reveal what the secret was and said that "something will happen" if she revealed the secret. 7 RP (Nov. 1, 2017) at 211. When it became clear that AB would not answer any more questions, Hancock terminated the interview.

The State also played Mitchell's forensic interview with AB for the jury. In this interview, AB disclosed to Mitchell that she (AB) had had "[s]ex" with her father and described performing fellatio on more than one occasion. 8 RP (Nov. 2, 2017) at 26. AB also admitted that she had once been caught watching pornography on a computer. 8 RP (Nov. 2, 2017) at 48.

Each testified that AB had consistently disclosed that Brooks had engaged in sexual contact with her numerous times and that this contact included oral sex and vaginal intercourse. AB also expressed fear that if her father was not found guilty, he might hurt her or hurt or kill her sister. Additionally, Each testified that sexual abuse victims can start engaging in "sexually-reactive behaviors, which would be anything from fondling/masturbation of themselves to using toys to even touching of other peers or adults within the home." 8 RP (Nov. 2, 2017) at 158.

Each also testified that part of her role as a therapist was to help child victims of sex abuse prepare for trial by allowing them to "process[] how they feel about [going to court] and overcoming any fears or worries so that they could feel more comfortable with the idea of coming to court." 8 RP (Nov. 2, 2017) at 107. Each stated that this process did not include coaching the child about what to say in court. Instead, the process often included teaching the child about the role each person plays in court and helping the child find a way to tell his or her story.

Each also testified that AB made some of her disclosures while they were working on making AB more comfortable with going to court. But Each asserted that when AB would start talking about the abuse, she (Each) would clarify that she was now being the therapist rather than roll playing with AB about the trial process.

B. DEFENSE EVIDENCE

Brooks's grandmother testified that in April 2015, she had discovered AB looking at pornography on her father's computer.

Brooks testified that the family had previously lived in Texas but that he had brought his daughters to Washington against Randi's wishes because he was afraid she would try to get custody of them in Texas. Brooks denied having any sexual contact with AB. He was aware that his grandmother had discovered AB watching pornography, and he knew that AB had once inadvertently opened a pornographic website on his computer while trying to look at video on another cites. But he denied ever intentionally exposing AB to pornography.

Brooks also testified about his younger daughter, CB. He stated that CB had speech development issues, that she had difficulty communicating, and that her ability to speak had improved while she was at preschool and she would possibly be able to start kindergarten on time.

C. CLOSING ARGUMENT

In closing argument, defense counsel argued that Each's therapy or Randi caused AB to become concerned that Brooks might kill CB. The State rebutted this statement with the following argument:

6

And let's think about then why it is that over a period of time after [AB's] finally processed her feelings about this man who repeatedly raped her over a year, why it is that she's scared for her little sister? This is a little girl who finally found her voice when she spoke with her grandmother after a couple of weeks of living there with her. This is a little girl who is finally processing and becoming able to talk to you people about it, about her feelings and about what happened to her. This is a little girl who has known her sister all her life, she has known that her sister has absolutely no voice, is incapable of talking.

So you ask why it is that she might be scared that the Defendant could do this to her little sister? Her sister can't talk to you about what happened to her, that is why. She doesn't want it to happen to her little sister because no one can defend her little sister. She is defending herself. She told you people what happened. She was terrified of doing so, and she still was able to tell you that she sucked his penis; that his penis went inside her vagina like this.

10 RP (Nov. 3, 2017) at 73-74.

After the argument, defense counsel objected to the portion of the State's rebuttal argument referring to the fact CB "could not tell what happened to her." 10 RP (Nov. 3, 2017) at 79. Defense counsel argued that this statement was inflammatory and that it suggested that "something actually happened to [CB] and that she can't talk about it." 10 RP (Nov. 3, 2017) at 79. Commenting that he was "not really sure what kind of curative instruction could cure that," defense counsel asked for a mistrial. 10 RP (Nov. 3 2017) at 79.

The State responded that the argument was based on the evidence and was rebuttal to defense counsel's claim argument that AB is now claiming she's afraid Brooks is going to kill her sister. The trial court denied the motion for mistrial.

D. JURY INSTRUCTIONS

The trial court gave the jury a *Petrich*[5] unanimity instruction stating,

---

[5] *State v. Petrich*, 101 Wn.2d 566, 572, 683 P.2d 173 (1984), *overruled on other grounds by State v. Kitchen*, 110 Wn.2d 403, 405-06, 756 P.2d 105 (1988).

The State alleges that the defendant committed acts of Rape of a Child in the First Degree on multiple occasions. To convict the defendant of Rape of a Child in the First Degree, as charged in count I, one particular act of Rape of a Child in the First Degree must be proved beyond a reasonable doubt, and you must unanimously agree as to which act has been proved. To convict the defendant of Rape of a Child in the First Degree, as charged in count II, one particular act of Rape of a Child in the First Degree must be proved beyond a reasonable doubt, and you must unanimously agree as to which act has been proved. You need not unanimously agree that the defendant committed all the acts of Rape of a Child in the First Degree.

Clerk's Papers (CP) at 103 (Jury Instruction 11). The trial court also provided the jury with to convict instructions for each count.

During its deliberations, the jury submitted the following question to the trial court: "Instruction 9 mentions Count I, Instruction 10 mentions Count II—with exception of Count I, Count II they read exactly the same. Instruction 11 reads the same for Count I and Count II. What is the difference between Count I and Count II." CP at 87.

After consulting with the parties, the trial court retracted the original to convict instruction for Count II and provided the jury with a new to convict instruction for Count II, revised Jury Instruction 10, that provided in part:

To convict the defendant of the crime of rape of a child in the first degree in Count II, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on, about, or between May 20, 2015 and March 31, 2016, *on an occasion separate and distinct from Count I*, the defendant had sexual intercourse with Arianna Brooks.

CP at 102 (emphasis added). The new instruction added the phrase, "on an occasion separate and distinct from Count I," to the original instruction. CP at 102.

The jury found Brooks guilty of two counts of first degree rape of a child. Brooks appeals his convictions.

ANALYSIS

I. SKYPE TESTIMONY

Brooks first argues that the trial court erred when it allowed Each to testify by Skype during the *Ryan* hearing. He argues that because there is no criminal rule or other authority allowing for such testimony, the Skype testimony was not permitted. We disagree.

> A trial court may exercise reasonable control over the orderly presentation of argument and evidence. *See, e.g.*, ER 611(a) (granting the court authority to make the "presentation effective for the ascertainment of the truth" and to "avoid needless consumption of time"); *State v. Johnson*, 77 Wn.2d 423, 426, 462 P.2d 933 (1969) ("Because the trial court has a duty to conduct the trial fairly, expeditiously and impartially, it has a corresponding power to adopt practices and procedures reasonably designed to secure such ends."). When considering a procedure "not regulated or covered by statute, formal rule or precedent," we review in light of that "wide discretion." *Id*.

*Sanders v. State*, 169 Wn.2d 827, 851, 240 P.3d 120 (2010). A trial court abuses its discretion when it makes a manifestly unreasonable decision or bases its decision on untenable grounds or reasons. *In re Pers. Restraint of Duncan*, 167 Wn.2d 398, 402, 219 P.3d 666 (2009). Application of the wrong legal standard is an abuse of discretion. *Duncan*, 167 Wn.2d at 403.

Brooks contends that Each's Skype testimony in a *Ryan* hearing was not allowed under RCW 9A.44.150(1). RCW 9A.44.150(1) establishes when a child witness under the age of fourteen may testify outside the presence of the defendant and the jury by means of "one-way closed-circuit television." Because Each was not a child under the age of fourteen and the trial court was not addressing the use of "one-way closed-circuit television equipment," Brooks is correct that RCW 9A.44.150(1) does not apply here. But the fact RCW 9A.44.150(1) does not

provide express authority to allow Skype testimony from an adult witness during a *Ryan* hearing is not dispositive.

Brooks's argument assumes that the trial court must have express authority to permit Skype testimony during a *Ryan* hearing, but this assumption is incorrect. Under RCW 2.28.150, the trial court has authority to adopt "any suitable process or mode of proceeding . . . which may appear most conformable to the spirit of the laws" in the absence of a statute or rule[6] defining a procedure. Brooks does not cite to, nor can we locate, any authority defining a procedure by which the trial court may allow any form of two-way audio visual communication to facilitate the appearance and testimony of an adult, non-victim witness in an evidentiary hearing, such as a *Ryan* hearing, in a criminal proceeding. And Brooks does not cite to, nor can we locate, any authority prohibiting such an accommodation. Thus, under RCW 2.28.150, the trial court had discretion to allow the Skype testimony if it conformed to the spirit of the laws.

Where the criminal rules are silent, the civil rules can be instructive as to matters of procedure. *State v. Moen*, 129 Wn.2d 535, 540 n.2, 919 P.2d 69 (1996) (citing *State v. Hackett,* 122 Wn.2d 165, 170, 857 P.2d 1026 (1993); *State v. Gonzalez,* 110 Wn.2d 738, 744, 757 P.2d 925 (1988)). CR 43(a)(1) demonstrates that the trial court's decision to allow the Skype testimony is "conformable to the spirit of the laws." RCW 2.28.150. Although a civil rule rather than a criminal rule, CR 43(a)(1) allows the trial court to "permit testimony in open court by contemporaneous transmission from a different location" for "good cause in compelling circumstances and with

---

[6] For purposes of RCW 2.28.150, statutes and court rules are treated equally. *In re Detention of Cross*, 99 Wn.2d 373, 380-81, 662 P.2d 828 (1983).

appropriate safeguards." This rule demonstrates that the law allows certain testimony to be presented via two-way real-time transmissions.

Because RCW 2.28.150 allows the trial court to adopt a suitable procedure in the absence of existing statutes or rules governing such procedure and because allowing the Skype testimony conforms to the spirit of the law, the trial court did not abuse its discretion in permitting Each's Skype testimony at the *Ryan* hearing.[7]  Accordingly, this argument fails.

## II.  JURY UNANIMITY

Brooks next argues that the trial court's *Petrich* instruction deprived him of his right to a unanimous verdict on each of the charges because the instruction did not advise the jury that it had to base Count II on a particular act that was different from the particular act supporting a conviction on Count 1.  This argument fails because Brooks reads the *Petrich* instruction in isolation.

We review jury instructions as a whole to determine whether the instructions properly inform the jury of the applicable law, are not misleading, and allow the parties to argue their theories of the case.  *State v. Embry*, 171 Wn. App. 714, 756, 287 P.3d 648 (2012).  We review the adequacy of jury instructions de novo.  *Embry*, 171 Wn. App. at 756.

Although the *Petrich* instruction did not require that the jury predicate Count II on an act separate and distinct from the act that was the basis of Count I, the trial court's revision to the to convict instruction for Count II, revised jury instruction 10, expressly stated this requirement.  Reading the revised instruction 10 together with the *Petrich* instruction, these two instructions

---

[7] We do not address whether Skype testimony by an expert would be proper in a criminal trial.

required the jury to unanimously find two separate and distinct acts. Accordingly, this argument fails.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM: FAILURE TO TIMELY OBJECT

Brooks next argues that he received ineffective assistance of counsel when defense counsel failed to timely object to the State's rebuttal argument, which he asserts implied that he had also sexually molested CB or that the jury would be placing CB in danger if it did not convict him. This argument fails.

#### A. PRINCIPLES OF LAW

To prevail on a claim of ineffective assistance of counsel, Brooks must show that defense counsel's performance was deficient and that the deficient performance was prejudicial. *State v. Humphries*, 181 Wn.2d 708, 719-20, 336 P.3d 1121 (2014) (citing *Strickland v. Washington*, 466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Counsel's performance is deficient if it falls "'below an objective standard of reasonableness.'" *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (quoting *Strickland*, 466 U.S. at 688).

Brooks bears the burden of establishing, based on this record, deficient performance and must overcome "'a strong presumption that counsel's performance was reasonable.'" *Grier*, 171 Wn.2d at 33 (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)); *see also Grier*, 171 Wn.2d at 29; *State v. Linville*, 191 Wn.2d 513, 524-25, 423 P.3d 842 (2018) (citing *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995)). A failure to demonstrate either deficient performance or prejudice defeats an ineffective assistance claim. *Kyllo*, 166 Wn.2d at 862.

B.  NO DEFICIENT PERFORMANCE

Brooks contends that defense counsel failed to timely object to the State's rebuttal argument, which Brooks asserts implied that he had also sexually molested CB or that failing to convict him would place CB in danger.  Brooks is correct that defense counsel did not lodge a contemporaneous objection and that he objected only after the State's rebuttal was over.  But Brooks cites no authority establishing that a motion for a mistrial following closing argument, rather than a contemporaneous objection, is not a reasonable approach to improper argument. Moving for mistrial following the prosecutor's closing argument can be a reasonable decision. *See State v. Lindsay*, 180 Wn.2d 423, 430-31, 326 P.3d 125 (2014) (motion for mistrial following closing argument preserves challenges to prosecutorial conduct).

Additionally the record here gives us insight into why defense counsel did not make a contemporaneous objection.  Defense counsel explained that he did not think that a curative instruction would adequately address the challenged argument.  Given this, making a contemporaneous objection would risk drawing even more attention to the challenged argument without any benefit.  Because defense counsel had a reasonable tactical basis for delaying his objection, Brooks does not establish ineffective assistance on this ground.

IV.  SAG

In his SAG, Brooks raises several additional ineffective assistance of counsel claims, contends that he was denied his right to counsel during a portion of the proceedings, and asserts several prosecutorial misconduct claims.  These claims either fail or we cannot address them.

A. ADDITIONAL INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

1. Failure To Investigate or Call Expert Witnesses

Brooks asserts that he received ineffective assistance of counsel based on defense counsel's failure to investigate whether the defense could present testimony from a medical examiner and a "childhood memory expert." SAG at 2. This claim involves matters that are outside the record and are therefore only reviewable in a personal restraint petition. *State v. McFarland*, 127 Wn.2d 322, 338, 899 P.2d 1251 (1995). Accordingly, we do not address this claim.

2. Failure To Call Material Witness

Brooks next contends that defense counsel failed to call Brooks's father, whom Brooks characterizes as a material witness. Based on this record, this claim fails.

"Generally, the decision to call a witness will not support a claim of ineffective assistance of counsel." *State v. Thomas*, 109 Wn. 2d 222, 230, 743 P.2d 816(1987); *see also State v. Davis*, 174 Wn. App. 623, 639, 300 P.3d 465 (2013). "A defendant can overcome this presumption by showing that counsel failed to adequately investigate or prepare for trial." *Davis*, 174 Wn. App. at 639. But to overcome the presumption that defense counsel's failure to call a witness is a legitimate tactical decision, the record before us must demonstrate that the decision not to call the witness was not a legitimate trial tactic. *See Linville*, 191 Wn.2d at 524-25 (citing *McFarland*, 127 Wn.2d at 335).

The record shows that defense counsel listed Brooks's father as a potential witness but did not call Brooks's father to testify at trial. But in his statement to the court at sentencing, Brooks's father stated that defense counsel did not have him testify "because of one element that [Brooks's father] said definitely happened." Thus, the record explains why defense counsel did not call

Brooks's father as a witness. Not calling a witness because that witness's testimony would prove part of the offense or corroborate harmful evidence is a reasonable trial tactic. Because the record reveals a reasonable trial tactic, this ineffective assistance of counsel claim fails.

3. Intentional Failures To Object

Brooks next argues that he received ineffective assistance of counsel because defense counsel was intentionally "neglect[ing] his duties" in order to set up opportunities for a successful appeal. SAG at 3. Brooks specifically notes that defense counsel told him that this was his intent and that defense counsel said he had intentionally failed to object to a "vague" or confusing jury instruction and failed to object to the State's rebuttal argument during argument. SAG at 3. But what defense counsel told Brooks is outside the record. Accordingly, we cannot address this claim.

B. DENIAL OF RIGHT TO COUNSEL

Brooks next asserts that he was denied his right to counsel during a critical stage of his trial when his first defense counsel withdrew in March 2017, shortly before the originally scheduled *Ryan* hearing and trial. Brooks claims that due to this withdrawal, he did not have counsel for three weeks, he was forced to agree to waive his speedy trial rights, and his new counsel's need to conduct his own investigation allowed more time for AB to be "manipulate[d]." SAG at 5.

The record shows that Brooks's first counsel was replaced sometime before July 11, 2017, but we have no record related to when Brooks's first counsel withdrew and when defense counsel was appointed. Nor do we have the record regarding all of defense counsel's investigations. Accordingly, this issue involves matters outside this record, and we cannot address it on appeal.

C. PROSECUTORIAL MISCONDUCT

1. Charging Decision

Brooks contends that the State engaged in prosecutorial misconduct by demonstrating "[p]artiality in pressing charges." SAG at 6. He appears to assert that the prosecutor pursued the two charges despite a lack of evidence.

"Prosecuting attorneys are vested with great discretion in determining how and when to file criminal charges." *State v. Korum*, 157 Wn.2d 614, 625-26, 141 P.3d 13 (2006). And the record clearly establishes that the evidence was sufficient to convict Brooks on two counts of first degree child molestation. Accordingly, this claim has no merit.

To the extent that Brooks is claiming that there was insufficient evidence to support the charges when they were originally filed, the record does not contain any information disclosing what evidence the prosecutor originally relied on when deciding to bring the charges. Accordingly, we cannot address this claim.

2. "False Pretense"

Brooks further contends that the prosecutor engaged in misconduct because he "us[ed] false pretense to" obtain a waiver of speedy trial based on the unavailability of a witness. SAG at 6. Brooks refers to a mid-January 2017 continuance.

The only record from January 2017 before us relates to a motion to continue the *Ryan* hearing based on Brooks's original defense counsel being in trial and a motion to use Skype to present testimony at the *Ryan* hearing. Because there is nothing in the appellate record related to a waiver of speedy trial based on the unavailability of a witness for the *Ryan* hearing, we cannot address this claim.

3. Closing Argument

Brooks contends that the prosecutor's closing argument suggesting that there were "additional victims" or that he had also raped CB was an appeal to the jury's passion and prejudice and amounted to prosecutorial misconduct. SAG at 6. Brooks misconstrues the State's argument. The State argued that AB was afraid that if Brooks was not convicted, he *might* harm CB and that CB would be unable to disclose that harm, not that there were other victims or that Brooks had already harmed CB. Accordingly, this claim fails.

4. Cumulative Prosecutorial Misconduct

Finally, Brooks argues that these alleged instances of prosecutorial misconduct, viewed cumulatively, demonstrate that the prosecutor was attempting to "win at all costs," and that reversal is warranted. SAG at 6. Because Brooks fails to show that any of the alleged instances of misconduct amounted to prosecutorial misconduct or we are unable to examine these claims based on the record, the cumulative prosecutorial misconduct claim fails.

CONCLUSION

We hold that under RCW 2.28.150, the trial court had the authority to permit the Skype testimony, that the jury instructions as a whole ensured that Brooks was not denied his right to a unanimous verdict, and that defense counsel's failure to make a contemporaneous objection to the State's rebuttal argument was not deficient representation in light of the post-argument objection

and motion for mistrial.  We further hold that Brooks's claims in his SAG either have no merit or cannot be reviewed because they relate to matters outside the record.  Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

MAXA, C.J.

MELNICK, J.