IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondent,<br><br>         v.<br><br>CHRISTOPHER WRIGHT<br>AKA CESHAWN DADE,<br><br>               Defendant,<br><br>JEANIA DYSON,<br><br>               Appellant. | No. 82018-4-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. — A superior court judge ordered inmate Jeania Dyson, a material witness, to participate in a deposition and found her in contempt when she refused to do so. The court further ordered her to fully and truthfully answer questions asked of her or face sanctions. When she again refused, the court continued to hold her in contempt and imposed sanctions. Dyson appeals the court's order imposing remedial sanctions contending that the court had no authority to sanction Dyson for failing to comply with an unlawful order. We agree and conclude the trial court abused its discretion. We vacate the court's order imposing remedial sanctions. We remand and order that any monetary fine collected as a sanction be refunded.

Citations and pin cites are based on the Westlaw online version of the cited material.

FACTS

In 2019, the State charged Christopher Wright, also known as Ceshawn Dade, with murder for a homicide that occurred in 1995. In 2012 and 2018, Dyson, Wright's ex-wife, provided statements to law enforcement about Wright's involvement in the murder. After the State charged Wright, Dyson, now in prison for unrelated offenses, stopped cooperating with the State. After consulting with counsel assigned to represent her, she remained unwilling to participate in a defense interview at the prison. The State obtained an order transferring Dyson to King County jail in August 2020. The order stated that she "will be returned to the Department of Corrections upon completion of pre-trial interviews." A defense interview was arranged at the prosecutor's office. Dyson, through her attorney, maintained she would not answer any questions by the State or defense.

The State then requested a deposition and a finding of contempt if Dyson continued to refuse to participate. At the first hearing, Dyson informed the court through her counsel that "her intention is to not make any statements at a deposition, if so ordered." Before any discussions of any specific sanctions, Dyson's counsel told the court he explained the consequences of being held in contempt and that she understood the court could impose sanctions on her.

Everyone, including Wright's counsel, agreed that they prefer to not go through the cost of scheduling a deposition until there was a reason to believe Dyson's opinion on participating in a deposition would change. Dyson's counsel conceded that the court had a basis to find Dyson in contempt but asked that it

not do so and release her back to prison.

The State asked the court to find Dyson in contempt and hold her in custody without time credited toward her Department of Corrections (DOC) sentence until she changed her mind about refusing to be deposed. Dyson objected to the court denying her jail credit toward her DOC sentence as a remedial sanction. Dyson stated that she did not think the court had authority to ask that Dyson be denied credit for her DOC sentence.

The court ordered Dyson to participate in a deposition. The Court found that,

> [b]ecause Ms. Dyson has clearly represented that she will not participate in a deposition, Ms. Dyson will be held in contempt of court and is ordered to remain in the King County Jail until the date of hearing 9/29/20 @ 11 am at which point the court will impose sanctions if there is a continuing refusal to fully and truthfully answer questions.

The court had expressly ordered Dyson "to cooperate and fully and truthfully answer questions asked of her in this matter." The record is devoid of any evidence that Dyson or the court was presented with specific questions that were to be asked at a deposition. The court ordered Dyson to remain in King County jail.

At the second hearing on September 29, the court found Dyson in continuing contempt for her refusal to participate.[1] The court ordered the following remedial sanctions.

---

[1] Wright and his attorney, Matt Lapin, waived their presence at this hearing.

(1) Jeania Dyson is ordered to remain in the King County Jail until she participates in a deposition in this matter and cooperates by fully and truthfully answering the questions asked of her.

(2) Jeania Dyson will be fined $1 per day from this date forward until such time as she participates in a deposition in this matter and fully and truthfully answers the questions asked of her.

(3) Jeania Dyson will not be returned to the Department of Corrections until she has participated in the deposition and fully and truthfully answered the questions asked of her.

(4) It is this court's intent that Jeania Dyson will not receive credit on her DOC sentence as long as she is being held in contempt in the King County Jail.

Dyson timely appealed. In February 2021, Wright pled guilty and eliminated the need to depose Dyson. The court terminated its sanctions as of February 12, 2021.

## DISCUSSION

We review a court's authority to impose sanctions for contempt as a question of law reviewed de novo. In re Dependency of A.K., 162 Wn.2d 632, 644, 174 P.3d 11 (2007). Thereafter, a court's decision to find a person in contempt and to impose punishment will not be disturbed absent an abuse of discretion. State v. Jordan, 146 Wn. App. 395, 401, 190 P.3d 516 (2008). A trial court abuses its discretion when it exercises its discretion in a manifestly unreasonable manner or bases its decision on untenable grounds or reasons. Id.

### Contempt

Dyson first contends that while the court can order someone to attend a deposition, the court cannot order the person to answer questions at a deposition. Dyson is wrong.

CrR 4.6(a) grants the court authority to order a deposition in a criminal case when a witness refuses to discuss the case with either counsel and the witness' testimony is material and necessary.  CrR 4.6(a)(2).

The Criminal Rules do not address deposition procedures, but civil rules can be instructive in matters of procedure when the Criminal Rules are silent.  CrR 4.6(a), (c), (e); see also State v. Gonzalez, 110 Wn.2d 738, 744, 757 P.2d 925 (1988).

The civil rules state that at a deposition, "[w]itnesses shall be instructed to answer all questions directly and without evasion to the extent of their testimonial knowledge, unless properly instructed by counsel not to answer."  CR 30(h)(4).  If the witness fails to answer a question posed at a deposition, "any party may move for an order compelling an answer. . . "  CR 37(a)(2).  Further, when a deponent refuses to answer the questions propounded, the court may take such course as it deems just under the circumstances.  State v. Peele, 10 Wn. App. 58, 68–69, 516 P.2d 788, 794 (1973).  The imposition of sanctions is within the discretion of the trial court.  Id.

The parties do not dispute that Dyson was a material witness, that she summarily presented to the court that she would not participate in a deposition, and that the State, as a party, could request a deposition.[2]  See CrR 4.6(a)(3).

The court had the authority to order her to participate in a deposition after

---

[2] Although the court stated that Wright joined in the request for deposition, the record does not reflect that Wright expressly requested a deposition or joined in the State's request.  He only agreed that the parties should not go through the motions of scheduling a deposition unless there was a reason to believe Dyson's position would change.

she refused to grant a defense interview. CrR 4.6(a)(2). The court also had the authority to hold her in contempt for not following a lawful court order. RCW 7.21.010(1)(b). Dyson's reliance on cases holding that a witness may refuse an "interview" with the defense are inapposite because those cases did not involve a refusal to participate in a "deposition." See State v. Wilson, 108 Wn. App. 774, 776, 31 P.3d 43 (2001); State v. Hofstetter, 75 Wn. App. 390, 878 P.2d 474 (1994); see also State v. Zhao, 157 Wn.2d 188, 205, 137 P.3d 835 (2006) (Sanders, J., concurring) (concluding witnesses have the right to refuse an interview).

At the first hearing, the court found Dyson in contempt for summarily stating she would not participate in a deposition, a position she consistently represented and was not likely to change according to her counsel despite understanding the court could find her in contempt. The court did not err at the first hearing by finding Dyson in contempt for summarily refusing to participate in a deposition.

Dyson next contends the court had no authority to order her to cooperate by fully and truthfully answering questions asked of her. Dyson correctly contends that even if a witness may be compelled to participate in a deposition, there is nothing in CrR 4.6 that requires a successful or cooperative deposition. See State v. Mankin, 158 Wn. App. 111, 124, n.10, 241 P.3d 421, 427 (2010) (noting that "even if the parties can compel a witness to participate in an interview or deposition, there is nothing in the rule that requires a successful or cooperative deposition"). We agree the court had no authority to issue a blanket

6

order requiring Dyson to cooperate and participate in a deposition by fully and truthfully answering the questions asked of her.[3]

Court rules provide the procedural steps to be taken when a deponent refuses to answer questions at a deposition. CR 37(a)(2); see CrR 4.6(a). Parties must indicate to the court which questions they wish to ask the witness before asking the court to compel those answers so the court may determine whether the information sought is material and necessary. CR 37(a)(2); CrR 4.6(a); see also State v. Gonzalez, 110 Wn.2d 743, 744, 757 P.2d 925 (1988) (recognizing the trial court's threshold inquiry in a criminal case was whether the information sought at a deposition was material).[4] In other words, in a criminal case, a court must first consider the specific question asked and whether the

---

[3] We recognize that the deponent must be placed under oath for the deposition.

> The officer before whom the deposition is to be taken under rule [CR] 28(a) shall put the witness on oath and shall personally, or by someone acting under the officer's direction and in the officer's presence, record the testimony of the witness. However, such oath and recording may be administered by the officer from a location remote from the deponent.

CR 30(c). Courts have the authority to instruct witnesses to answer questions directly and without evasion to the extent of their testimonial knowledge. CR 30(h)(4). However, whether the deponent's answers are actually true relates to credibility, which may be attacked by any party at trial. ER 607. Lying under oath implicates potential criminal charges outside of the contempt statute. See RCW 9A.72.020 (defining the crime of perjury in the first degree); RCW 9A.72.040 (defining false swearing, a gross misdemeanor).

[4] Witnesses also do not give up their right to not self-incriminate. See State v. Hobble, 126 Wn. 2d 283, 289, 892 P.2d 85 (1995) (recognizing the Fifth Amendment provides that no person shall be compelled in any criminal case to be a witness against himself; this privilege includes the right of a witness not to give incriminating answers in any proceeding). The court determines whether the privilege applies under all the circumstances then present. Hobble, 126 Wn. 2d at 289. Dyson does not raise the issue of self-incrimination.

information sought is material and necessary before determining if the deponent may be compelled to answer. The court did not follow these procedures before issuing a blanket order that required Dyson to fully cooperate and truthfully answer questions asked of her.

The State cites no authority supporting the court's issuance of a blanket order that Dyson cooperate by fully and truthfully answering questions asked of her. Instead, the State argues that this was invited error.

The invited error doctrine prohibits a party from setting up an error at trial and then complaining of it on appeal. In re Pers. Restraint of Thompson, 141 Wn.2d 712, 723, 10 P.3d 380 (2000). In invited error doctrine cases, the defendant took knowing and voluntary actions to set up the error; where the defendant's actions were not voluntary, the court did not apply the doctrine. Id.

When Dyson conceded that the court had a basis to generally find Dyson in contempt for refusing to participate in a deposition, it was before the court ordered Dyson to cooperate by fully and truthfully answering questions asked of her. Dyson did not invite error.

The court had no authority to issue a blanket order that required Dyson to cooperate by fully and truthfully answering questions asked of her.

<u>Sanctions</u>

Dyson contends that if the court's order is invalid, it follows that the court abused its discretion by finding Dyson in contempt of that order. We agree.

It is undisputed that the court acted under its remedial contempt authority.

Under the remedial sanctions statute, RCW 7.21.030,[5] when a court finds a person in contempt for refusing to perform an act that is within a person's power to perform, the court may impose one or more of a statutorily enumerated list of sanctions. RCW 7.21.030(1). One requirement of a remedial sanction is that the sanction is within the contemptor's power to perform. Matter of Det. of Faga, 8 Wn. App. 2d 896, 900, 437 P.3d 741(2019) (citing RCW 7.21.030(2)). The inability to comply with the court's order is an affirmative defense. Faga, 8 Wn. App. 2d at 901. "A coercive sanction is justified only on the theory that it will induce a specific act *that the court has the right to coerce*." In re M.B., 101 Wn. App. 425, 440, 3 P.3d 780, 788 (2000) (emphasis added).

The court had authority to find Dyson in contempt for continuing to refuse to participate in a deposition, but it could not condition that participation on Dyson fully and truthfully answering questions. At the first hearing, the court informed Dyson that the court would impose sanctions at the second hearing, "if there's continued refusal to fully and truthfully answer the questions." RP 15. At the second hearing, the court imposed sanctions and explicitly informed Dyson that in order to purge the contempt she had to participate in a deposition "and" cooperate "by fully and truthfully answer[ing] the questions." RP 15. Without any specificity of what those questions would be, Dyson was left with what amounted to be a directive to cooperate in a deposition by fully and truthfully answering all questions asked of her in order to purge her contempt—a condition

---

[5] An amended version of RCW 7.21.030 went into effect July 1, 2021. Because the relevant sections of the statute did not change from the time Dyson was held in contempt, we cite the current version of RCW 7.21.030 for clarity.

the court had no authority to demand.

Between the time the court imposed the unlawful condition and the time the court sanctioned Dyson, she was never given the opportunity to consider what questions would be asked. The deposition was requested for the purpose of a defense interview, but Wright's counsel did not make a record of what questions were to be asked or request that Dyson be sanctioned for refusing to answer defense questions. In fact, Wright and his counsel waived their appearance at the second hearing where the State requested sanctions for Dyson failing to answer questions by the defense that were never posed.

In Faga, the State filed a petition seeking Faga's civil commitment as a sexually violent predator and filed a motion to compel Faga to participate in evaluations required by law. Faga, 8 Wn. App. 2d at 898. Faga refused to participate in the evaluations arguing that experts required him to sign waivers of various rights. Id. at 899. The court found Faga in contempt. Id. Faga argued that requiring him to sign waivers giving up various rights was an improper condition for him to purge the contempt. Id. We explained that requiring Faga to sign the waivers would have been unlawful, but we noted that the trial court did not order Faga to sign the waivers as a modification or additional requirement imposed by the court. Id. at 901.

Unlike the court in Faga, the trial court in the instant case did issue an order that imposed a requirement in addition to participation in a deposition. The court required Dyson to give up her right to not answer questions that were not material or necessary. Without knowing what the questions were, Dyson would

not know if it may implicate her constitutional right to remain silent.  The trial court exceeded its authority and placed an improper purge condition on Dyson.  The court did not have a right to coerce Dyson in this manner.

CONCLUSION

The court exceeded its authority when it issued a blanket order requiring Dyson to cooperate in a deposition by fully and truthfully answering questions asked of her–an improper purge condition.  Thus, the court's reasons for finding Dyson in contempt and sanctioning her were untenable.  The court abused its discretion sanctioning Dyson for contempt of an unlawful order.

We remand with instructions to vacate the court's order imposing remedial sanctions.[6]  Any monetary fine collected as a sanction shall be refunded.

_____
Coburn, J.

WE CONCUR:

_____          _____
Bowman, J                            Appelwick, J.

---

[6] Because we remand and vacate the sanctions order, we need not address whether the court properly ordered the Department of Corrections to not give Dyson jail credit for her time held in King County jail as a contempt sanction.

11